NEWPORT NEWS SHIPBUILDING AND DRY DOCK, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Garland R. Hess, Respondents.

No. 81–1323.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1982.

Decided June 28, 1982.

 

Junius C. McElveen, Jr., Washington, D. C. (Anita Barondes, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for petitioner.

Robert R. Hatten, Newport News, Va., (Patton & Wornom, Newport News, Va., on brief), for respondents.

Before HAYNSWORTH, Senior Circuit Judge, and MURNAGHAN and ERVIN, Circuit Judges.

HAYNSWORTH, Senior Circuit Judge:

The question is whether or not a former employee, totally disabled by unrelated infirmities, was also totally or partially disabled by asbestosis, of which he was unaware at the time of retirement. In the processing of a claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901. *et seq.*, the Administrative Law Judge found that he was not, but the Benefits Review Board, its chief judge dissenting, reversed and remanded, in effect directing the finding of at least a partial disability. A subsequent finding of a partial disability by reason of asbestosis was affirmed by the Benefits Review Board. The employer filed a petition for review here.

I.

In 1948 while Hess was working as a coal miner, he injured his knee. After surgical treatment, he was able to return to his work in the coal mine, and the knee caused him no problem until 1965 when he began to receive treatment by an orthopedist for degenerative, traumatic arthritis of the joint. The condition worsened over the next ten years.

In 1951, Hess left his coal mine employment and was employed by the shipyard as a boilermaker. He was assigned to the repair and overhaul of ships' boilers. He worked inside boilers removing asbestos blocks and firebricks, which insulated the boilers, and replacing them with new. Old asbestos was removed with chipping hammers creating flying asbestos dust. In 1971, however, he was made boilermaker

foreman. Thereafter he no longer performed manual labor. His exposure to asbestos dust was substantially lessened but not eliminated.

In that same year, 1971, Hess underwent coronary bypass surgery. It was apparently successful, and he was able to return to work, but he continued to suffer some coronary and vascular disease. The presence of that disease, in the opinion of the orthopedic surgeon, made imprudent any attempt to correct the knee problem with surgery.

In 1976 Hess took disability retirement. His physician advised it because of his worsening knee problem. Hess stated that he retired for that reason, and his wife so testified. At the hearing several physicians testified that he was then totally disabled primarily because of the knee and secondarily because of the heart problem. Indeed, after retirement Hess experienced considerable difficulty getting around on his knee.

Some four months after his retirement for disability, Hess was hospitalized with rheumatoid vasculitis. An x-ray of his chest was taken and the treating physician upon examining the x-ray concluded that Hess had asbestosis. This diagnosis was later confirmed by two specialists, though there was later to be some disagreement as to whether his breathing impairment was caused principally by coal miner's pneumoconiosis or asbestosis.

## II.

After a hearing, the Administrative Law Judge found that at the time of his retirement Hess was totally disabled primarily because of the degenerative arthritis of the knee and secondarily because of his coronary artery disease. All of the evidence substantially contemporaneous with the retirement was to the effect that the disabling condition was the knee. Indeed, at the hearing Hess testified that he had retired because "my knee got so bad," he could no longer get up and down the ships'

ladders. He added that he had experienced some shortness of breath going up and down the ladders. Hess testified that he had experienced some shortness of breath beginning in 1972 or 1973. Indeed, physicians reported some ventilatory impairment. Ventilatory function studies disclosed "close to normal" functioning of the lungs, though a diffusion study showed that diffusion was only 78 per cent of normal. Moreover, the physicians were agreed that his vascular disease was at least a contributory cause of his breathing problem. At least one thought it the primary problem. There were expressions of medical opinion that Hess suffered little or no impairment from asbestosis.

The Administrative Law Judge agreed with that medical assessment. He found Hess' asbestosis was slight and non-disabling.

## III.

The Benefits Review Board, its chief judge dissenting, reversed and remanded. It first took the administrative law judge to task for not having discussed the diffusion study in his opinion. It read his opinion as containing an implicit finding that the breathing problem was attributable primarily to the heart condition, an implicit finding which it thought either wrong or inappropriate on the basis of the principle that if a covered condition combines with an uncovered condition to produce an infirmity, the entire infirmity is to be attributed to the covered condition.[1]

The Board, then invoking the principle of *Bath Iron Works Corp. v. White*, 584 F.2d 569 (1st Cir. 1978), reasoned that Hess had asbestosis as early as 1974, that continued exposure to asbestos dust was detrimental to his health and that he should have retired sooner or been transferred to work in an environment free of asbestos dust.

As indicated earlier, on remand a different administrative law judge found that

---

1. On remand, a different administrative law judge found there was no significant breathing impairment prior to his retirement in July, 1976. He took note of a statement made by Hess to a physician in 1978 to the effect that Hess had experienced some shortness of breath on moderate exertion since 1975. He found the breathing problem was not disabling.

Hess was totally disabled from the date of his retirement in part because of asbestosis. His finding and his allowance of benefits was affirmed by the Board.

## IV.

■ Section 21(b)(3) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(b)(3), makes the findings of the administrative law judge conclusive upon the Board if supported by substantial evidence. If thus supported, the Board is not free to disregard them or draw other inferences which it thinks may be more reasonable. On review here we must determine whether the Board observed the limited scope of review of findings of fact vested in it by the statute. *See Walker v. Universal Terminal & Stevedoring Corp.,* 645 F.2d 170, 172–73 (3d Cir. 1981); *Avondale Shipyards, Inc. v. Vinson,* 623 F.2d 1117, 1119 n.1 (5th Cir. 1980); *Air American, Inc. v. Director, Office of Workers' Compensation Programs,* 597 F.2d 773, 776–77 (1st Cir. 1979).

■ There is no dispute that the reason for Hess' retirement in July 1976 was the condition of his knee. It had worsened to the point that he could not climb the ladders in going to and from his work, and, because of his heart condition, the deformed and arthritic knee joint could not have been surgically replaced or corrected. At the time, no one said anything about a breathing problem, and both administrative law judges found the breathing problem minimal and not incapacitating. The Board simply was not free to find, as it ultimately did, that the total disability arose not out of the arthritis, but out of a combination of arthritis and coronary and pulmonary deficiencies, the latter being caused, at least in part, by asbestosis. It is clear that he would have gone right on working if his knee had not been totally disabling and that the breathing problem made no contribution to his disability.

This leaves for discussion only the Board's invocation of the principle of *Bath Iron Works.*

In *Bath Iron Works* a skilled worker, engaged in covering pipe with asbestos insulation, was found to be suffering from asbestosis. In order to get him out of an asbestos dust environment, he was transferred to the machine shop where he could perform only semi-skilled labor. Though the employer paid him the same wages he would have made as a pipe coverer, it was held that the asbestosis had diminished his wage earning capacity in an open market and the employer was required to pay him the differential over again.

■ We have no disagreement with the principle, but Hess had not been transferred from his position as a boilermaker foreman. He did not know that he had asbestosis, and, of course, he never requested a transfer.

The Board found, however, that the employer knew that Hess had asbestosis and should have informed Hess of this in 1974. This finding is premised upon a medical record in the employer's clinic. Hess had visited the clinic in 1974, and an x-ray was made of his chest. An unidentified reader of the x-ray noted observation of small rounded pulmonary densities, lateral pleural thickening and calcification of the left diaphragm. The recorded observation, however, was not accompanied by a diagnosis of asbestosis, and asbestosis is characterized not by small rounded densities but by irregular opacities. As indicated earlier, the small rounded densities are indicative of pneumoconiosis. Moreover, there are statements in the medical literature which indicate that pleural thickening and calcification may be indicative of exposure to asbestos fibers rather than asbestosis itself.

Surely we are in no position to consider whether the reader of the 1974 x-ray should have made a diagnosis of active asbestosis. At least one physician read the x-ray, together with much later ones, as showing coal miner's pneumoconiosis, and none of the medical experts were asked to review the failure of the 1974 x-ray reader to make a diagnosis of asbestosis. To find, as the Board did, that the reader knew that Hess then had asbestosis and deliberately failed

to inform Hess was no more than speculation.

Even if it had been known in 1974 that Hess had asbestosis, there is no basis for a finding that he would have been transferred or retired sooner than he was. There was much less asbestos dust in his working environment after he became a foreman, and he testified that he was using a protective respirator in the presence of asbestos dust. For all that appears in this record, had it been known in 1974 that Hess had asbestosis, Hess and his supervisors may well have concluded that it was more appropriate for him to continue in his existing job rather than to transfer to another.

Finally, *Bath Iron Works* provides a rule of compensation for diminished earning capacity when a victim of asbestosis, for his health's sake, is transferred to work in a dust-free environment. It obviously has no application to one who is already totally disabled by an unrelated cause. One may speculate that Hess might have been transferred out of boiler repair work before the condition of his knee became completely disabling, but the theory cannot justify an award, as decreed by the Board, for a period beginning with the onset of total disability by reason of the knee. Before retirement, the asbestosis was not disabling; after retirement there was no diminished earning capacity.

For these reasons the principle in *Bath Iron Works* is inapplicable here.

### V.

It was not inappropriate for the Board to remand to reconsider the extent of the breathing problem in light of its conclusion that all of the pulmonary deficiency should be attributed to asbestosis. Since, on remand, the second administrative law judge found the total breathing problem minimal and not disabling, the Board should have accepted the finding of the first administrative law judge that the total disability was attributable to the arthritic knee, a condition which was not correctible because of the heart condition. By not doing so, it exceeded the scope of its review.

REVERSED.