925 F.2d 1457
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Timothy B. REAGAN, Petitioner,
v.
HORNE BROTHERS, INCORPORATED, Liberty Mutual Insurance Co.,
Director, Office of Workers Compensation Programs,
United States Department of Labor, Respondents.
 No. 90-2360.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided Feb. 19, 1991.
 
 On Petition for Review of an Order of the Benefits Review Board. (88-386-BLA)
 Ralph Rabinowitz, Rabinowitz, Rafal, Swartz & Gilbert, P.C., Norfolk, Va., for petitioner.
 
 
 1
 Daniel Roger Lahne, Knight, Dudley, Dezern & Clarke, Norfolk, Va. (Argued), for respondents; B.E. Voultsides, Acting Deputy Commissioner, Office of Workers Compensation Programs, United States Department of Labor, Norfolk, Va., James L. Guill, United States Department of Labor, Carol A. DeDeo, Associate Solicitor, United States Department of Labor, Washington, D.C., on brief.
 
 
 2
 Ben.Rev.Bd.
 
 
 3
 AFFIRMED.
 
 
 4
 Before SPROUSE and WILKINS, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 PER CURIAM:
 
 5
 Timothy B. Reagan claims that the Benefits Review Board erred in reversing an administrative law judge's award of de minimis permanent partial disability under section 908(c)(21), (h) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. Secs. 901, et seq. (West 1986). We find no error and affirm.
 
 I.
 
 6
 Reagan worked as a pipesetter for Horne Brothers, Incorporated from January 1977 until he injured his back in August 1983. Horne Brothers paid him temporary total disability compensation until February 1984 when his treating physician allowed him to return to work. Since Horne Brothers had ceased to do business during the period Reagan was disabled, he did not return to that company but was hired by Metro Machine Corporation as a pipefitter. Reagan sought permanent partial disability benefits from Horne Brothers because his back pain continued during his employment with Metro.
 
 
 7
 To support his claim Reagan offered the findings of two orthopedic surgeons, Drs. Prillaman and Kirk. Dr. Prillaman, his treating physician, found the range of spinal motion to be nearly normal in all directions with only mild paraspinal spasm. He diagnosed spondylolisthesis, a forward displacement of one vertebra over another. Dr. Prillaman estimated a five percent permanent partial disability of Reagan's entire body as a result of the spondylolisthesis. He recommended that Reagan wear a back brace and prescribed aspirin for his pain. Although Dr. Prillaman recommended spinal fusion surgery in August 1984, he stated in his office notes that he had previously "held off recommending surgery" because Reagan was performing pipefitting work that was "certainly pretty heavy without too much problem despite his 'pain.' " After Dr. Prillaman advised Reagan that the surgical procedure was very risky, Reagan decided against having the operation.
 
 
 8
 Dr. Kirk examined Reagan in January 1985 and found a normal range of back motion with some discomfort on extreme rotation, unlimited straight leg raising, and normal motion of his lower extremities. He opined that the spondylolisthesis and some lower back strain could cause a permanent partial disability of between five and ten percent, and he placed restrictions on heavy lifting and bending. Dr. Kirk concluded that his examination did not reveal a great deal of objective medical evidence to corroborate Reagan's complaints of back pain.
 
 
 9
 Reagan testified that his job requires heavy lifting and that back pain hinders his ability to work and occasionally forces him to request that his supervisor find another employee to assist him in lifting heavy objects. His supervisor testified that Reagan's work is top quality and that he has not denied him any promotions as a result of his inability to perform some of the heavy lifting. Reagan testified that he has received several pay raises and a promotion while employed at Metro. Employment records indicate that he is able to perform jobs assigned to him, is productive, and does quality work.
 
 
 10
 After determining that Reagan suffers from a permanent medical impairment of his back, the administrative law judge (ALJ) found that Reagan was presently earning higher wages than at the time of his injury and that there was no evidence of economic loss resulting from his back problem. The ALJ further found that Reagan was 32 years of age, had a history of only heavy work, and did not have a high school diploma. He concluded that:
 
 
 11
 Unless [Reagan] remains at Metro for the rest of his working life, he will face in the future the prospect of seeking employment elsewhere burdened by his medical impairment. Other possibilities include loss of employment due to reduction in the work force or relocation to another area, or a worsening of his impairment. Even though the future is uncertain, the cyclical nature of the shipbuilding industry and the permanency of [his] impairment and his restrictions point to potential economic losses resulting from that impairment; it is impossible to fully determine [his] economic harm at this time.
 
 
 12
 For these reasons, the ALJ awarded Reagan a one percent permanent partial disability for a loss of future wage-earning capacity.
 
 
 13
 On appeal the Benefits Review Board determined that the evidence did not establish a significant possibility of any future loss of wage-earning capacity. The Board noted that Reagan's supervisor testified that other workers were similarly provided some assistance with heavy lifting and reiterated the finding of the ALJ that Metro was not a beneficent employer and that Reagan was not being accommodated more than other workers because of his injury. Concluding that the evidence did not establish a significant possibility of future economic harm due to the work injury, the Board reversed the ALJ's de minimis award.
 
 II.
 
 14
 The Longshore and Harbor Workers' Compensation Act mandates that the findings of the ALJ are conclusive upon the Board if they are supported by substantial evidence. 33 U.S.C.A. Sec. 921(b)(3) (West 1986). On review, this court "must determine whether the Board observed the limited scope of review of findings of fact vested in it by the statute." Newport News Shipbuilding & Dry Dock v. Director, Office of Workers' Compensation Programs, 681 F.2d 938, 941 (4th Cir.1982).
 
 
 15
 In determining whether a claimant has a loss of wage-earning capacity, factors to be considered include age, education, regularity of post-injury employment, possible sympathetic consideration by a post-injury employer, and a comparison of pre- and post-injury wages. Fleetwood v. Newport News Shipbuilding & Dry Dock Co., 776 F.2d 1225 (4th Cir.1985). Reagan argues that this court should follow Hole v. Miami Shipyards Corp., 640 F.2d 769 (5th Cir.Unit B Mar. 1981), and reinstate the de minimis award based upon the ALJ's determination that he will suffer future economic harm of a presently unascertainable degree. He claims that the award is appropriate since the Act authorizes consideration of "the effect of disability as it may naturally extend into the future," 33 U.S.C.A. Sec. 908(h) (West 1986), and because this award would preserve his statutory right to seek full benefits if his condition worsens, 33 U.S.C.A. Sec. 922 (West 1986).
 
 
 16
 While the Fleetwood court recognized in dicta that a de minimis award may be appropriate to protect an employee who suffers from an unascertainable degree of future economic harm due to loss of wage-earning capacity, 776 F.2d at 1234 n. 9, we find that there is no evidence that Reagan has suffered or will suffer economic loss because of his injury. See id. (declining to award de minimis disability payments). Reagan was employed by Metro shortly after the dissolution of Horne Brothers and has been continuously employed for approximately six years since returning to the work force after his injury. During this period he has received a promotion and pay raises in reward for top quality work in a job that requires heavy lifting. Further, Reagan is earning higher wages than he did at the time of his injury. Because the ALJ's conclusion that Reagan will suffer future economic loss is not supported by substantial evidence, we affirm the decision of the Benefits Review Board.
 
 
 17
 AFFIRMED.