934 F.2d 511
 NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,
v.
Dr. Sidney S. LOXLEY, Dr. Lawrence D. Bourgard, Director,
Office of Workers' Compensation Programs, United
States Department of Labor, Respondents.
 No. 90-1449.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 3, 1990.
Decided May 21, 1991.
As Amended June 3, 1991.
 
 Lawrence Philip Postol, Seyfarth, Shaw, Fairweather & Geraldson, argued, Washington, D.C., for petitioner.
 John Lucian Smith, Jr., Outland, Gray, O'Keefe & Hubbard, argued, Chesapeake, Va. (Michael S. Hertzig, Office of the Sol., U.S. Dept. of Labor, on brief), Washington, D.C., for respondents.
 
 
 1
 Before WIDENER and WILKINS, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 
 MICHAEL, District Judge:
 
 2
 The Newport News Shipbuilding and Dry Dock Company ("NNS") appeals from an Order of the United States Department of Labor Benefits Review Board pursuant to Section 21 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. Sec. 921 (West 1986) ("the Longshore Act"). Because we find that the Administrative Law Judge's decision was supported by substantial evidence, we reverse the decision of the Benefits Review Board.
 
 I.
 
 3
 The parties' dispute arose over payment for medical services which Dr. Loxley rendered to NNS employees. Under the Longshore Act, workers can select their own doctor; however, the Act limits the Employer's liability for the ensuing medical charges to the "prevailing rate."[1] Because neither the Act nor its regulations define "prevailing rate," NNS computed this rate pursuant to the methodology it used in its self-insured health benefit plan. Finding that Loxley's charges on three particular services exceeded the prevailing rate, NNS refused to reimburse Loxley in full.
 
 
 4
 The issue before the administrative law judge was whether Loxley's charges were within the prevailing rate limitation pursuant to section 7 of the Act. At the hearing, NNS introduced evidence explaining that it determined the prevailing rate by using figures from its health benefits plan, a plan which was negotiated with the Shipyard Union and covers some 77,000 workers and dependents. Under this plan, NNS agreed to pay the insured medical charges in full if the fee for a specified service, defined by CPT codes,[2] did not exceed the 80th percentile of charges for that particular service.[3] NNS incorporated this plan into its determination of the prevailing rate under the Longshore Act by using the 80 percent figure as the prevailing rate. Thus, when Loxley's charges exceeded its calculations of the prevailing rate for three CPT codes, NNS paid him only the amount represented by the 80th percentile.
 
 
 5
 At the administrative hearing, Loxley tendered his own testimony and that of Dr. Taylor, his expert. Besides admitting that he did not know what he, or other doctors in the area, charged for the disputed CPT codes, Loxley also presented no data which challenged use of the 80th percentile standard by NNS. Likewise, Dr. Taylor could not give either his charges or an estimate of the prevailing rate for the services at issue. Although he testified that Loxley's fees were fair, he conceded that he did not know the rates of other doctors and, without such information, he could not disagree with the Employer's statistical analysis. Moreover, Taylor stated that he had no problem with the Shipyard's use of the 80th percentile to determine the prevailing rate, although he thought its results were low. Taylor did offer some insight by explaining that the fees of specialists and generalists should not be computed in the same statistical base. NNS does not differentiate by specialty in computing the prevailing rates for the various CPT codes. However, in his testimony, Taylor could not articulate a method by which NNS could reasonably differentiate by specialization.
 
 
 6
 After hearing all of the evidence, the administrative law judge wrote an extensive opinion concluding that Dr. Loxley's charges exceeded the prevailing rate. He indicated that "the testimony of Drs. Loxley and Taylor fell far short of establishing that Dr. Loxley's charges fall within the [prevailing community rate]."
 
 
 7
 The Benefits Review Board ("the Board") reversed the administrative law judge's decision and disregarded his findings of fact. The Board disagreed with the lower court's determination that Loxley, as the proponent of an order requiring that NNS pay his charges in full, bore the burden of proof on the prevailing rates issue. After holding that NNS carried the burden of proof, the Board further disagreed with the administrative law judge's statement that, even if the burden fell on NNS, the employer had in fact met its burden. The Board concluded that "the employer's evidence is wholly insufficient to establish prevailing community charges for the medical services performed by Dr. Loxley."
 
 II.
 
 8
 According to section 21 of the Longshore Act, the standard of review for an administrative law judge's decision is whether the record contains sufficient evidence to support the decision. If the evidence meets this standard, the administrative law judge's findings of fact are "conclusive upon the Board" and "the Board is not free to disregard them or draw other inferences which it thinks may be more reasonable." Newport News Shipbuilding & Dry Dock Co. v. Director, 681 F.2d 938 (4th Cir.1982).
 
 
 9
 Reserving for the moment the issue of which party bore the burden of proof, we will first examine whether the Board exceeded its powers of review by disregarding the administrative law judge's findings of fact. Contrary to the administrative law judge's determination that its conclusion would have been the same even if NNS carried the burden of proof, the Board found the employer's evidence lacking. We do not agree with the Board's interpretation of the evidence presented at the hearing, and we find that the Board erroneously expanded its scope of review by its independent analysis of the facts.
 
 
 10
 Contrary to the rule that the administrative law judge's findings of fact are conclusive upon the Board, the appellate panel nonetheless attacked the conclusion that the process by which NNS determined the prevailing rate was adequate. The Board found the evidence submitted by NNS lacking in several respects. First, the Board found that the data offered by NNS did not "represent a true sample of medical fees charged by physicians practicing in the community." The record shows, however, that NNS made a broad survey of fees which included at least 46,700 charges submitted by approximately 70 percent of the doctors in the Hampton Roads area. That NNS utilized data from its negotiated health benefits plan is of no consequence. Citing the Act's provision that the employer shall furnish all medical, surgical, and other related treatment, 33 U.S.C.A. Sec. 907(a) (West 1986), the Board concluded that using the 80th percentile to determine the prevailing rate did not satisfy the Act's requirements. However, the Board's analysis neglects provisions in the Act and the regulations that an employer's obligation for medical charges is limited to the prevailing rate. Id. at Sec. 907(g); 20 C.F.R. Sec. 702.413 (1990).
 
 
 11
 The Board also found that the survey of fees by NNS was "inherently flawed" because it did not distinguish on the basis of medical specialization. Focusing on provisions in the Act and regulations which dictate that the prevailing rate should be measured by charges for "the same or similar care," 33 U.S.C.A. Sec. 907(b), (g) (West 1986); 20 C.F.R. Secs. 702.413, 702.414 (1990), the Board criticized NNS for relying solely on the use of CPT codes to compare fees. The Board noted that without evidence that the services performed by other physicians whose charges made up the data base did in fact constitute the same or similar care as that rendered by Loxley, NNS could not sustain its burden under the Act.
 
 
 12
 Based on the evidence produced at the hearing,[4] the administrative law judge found unpersuasive Loxley's challenge that NNS should have limited its data to the fees of physicians practicing his specialty, orthopedic surgery. We agree. Although the evidence showed that in two of the three CPT codes involved, the prevailing rate figure was actually higher when NNS used the entire pool of charges than when it measured only the charges of orthopedic surgeons,[5] we find that making a distinction between generalists and specialists is not necessary.
 
 
 13
 A series of factors supports this conclusion. First, the CPT codes were designed by the medical profession as a uniform reference to designate medical, surgical and diagnostic services. The codes do not differentiate by specialist. That each code encompasses "same or similar" services is apparent from their very definitions. Furthermore, the Act and regulations discuss comparable treatment; they do not distinguish between medical providers.[6] The Board concluded that NNS should use a separate data base for specialists; however, it did not define specialist and ignored evidence in the record indicating that no such definition is practically available.[7] Because we find that use of the CPT codes is sufficient to define "same or similar care" under the Act, we hold that the employer need not differentiate between generalists and specialists in determining the prevailing rate.
 
 
 14
 We also find improper the Board's statement that NNS did not submit evidence demonstrating the charges to patients in the relevant geographical area who are covered under any other type of plan. The data used by NNS included over 46,700 charges made by approximately 1700 doctors; this represents greater than 70% of the physicians in the applicable geographic area. If the Act's prevailing rate limitation demands that an employer conduct a more-encompassing survey of medical fees, then even employers such as NNS, which has an unusually large amount of resources at its disposal, would face a cumbersome, indeed prohibitive, burden. Although we note the Board's objection to the use of the previous year's rates as a basis for the current year's billings,[8] we do not think that this factor alone can undermine the methodology employed by NNS.
 
 
 15
 Because the Act and regulations give no guidance on how to ascertain the prevailing rate, employers must devise their own means of doing so. Absent more definitive directions for determining the prevailing rate, we believe that an administrative law judge's conclusion that the employer met its burden of defining such a rate should be given great credence by the Board. The evidence submitted at the hearing sufficiently supported the finding of the administrative law judge that NNS sustained its burden of proving the prevailing rates.
 
 III.
 
 16
 The administrative law judge found that Dr. Loxley carried the burden of proving that his rates were within the Act's prevailing rate limitation. The Board reversed, assigning the burden to the Employer. Because we affirm the conclusion of the administrative law judge that Loxley's charges exceeded the prevailing rate regardless of who carried the burden of proof, we need not decide on whom the burden falls in disposing of this appeal. However, the parties have properly raised the issue and, finding it in the better interests of the parties to resolve the matter, we hold that a physician who seeks an order compelling full payment of his charges carries the burden of proof at the administrative hearing.
 
 
 17
 The regulations under the Act provide as follows: If an employer refuses fully to compensate a physician for medical care provided under the Act, the physician can request the Director of the Office of Workers' Compensation Programs ("the Director") to investigate the unpaid charges. 20 C.F.R. Secs. 702.407(b), 702.414(a) (1990). Upon such investigation, the Director makes a finding on "whether the fee exceeded the prevailing community charges or the provider's customary charges" and advises the parties of his decision. Id. at Sec. 702.414(c). If a party disputes this finding, it has a right to request an administrative hearing pursuant to 5 U.S.C. Sec. 556. Id. at Sec. 702.415. The necessary parties at such a hearing include "the person whose fee or cost charge is in question and the Director, or their representatives. The employer or carrier may also be represented ... in the discretion of the administrative law judge." Id. at Sec. 702.416.
 
 
 18
 Neither Section 7 of the Act nor the regulations assign the burden of proof at the administrative hearing. However, for the following reasons we find that the burden is on the physician claiming that his charges are within the prevailing community rates. As the Board properly noted, under section 702.415 a party may request an administrative hearing pursuant to 5 U.S.C. Sec. 556. Therefore, subsection (d) of that provision, which states "Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof", is applicable. This placing of the burden of proof is consistent with the traditional common law rule, noted by the administrative law judge, that the proponent--the one who seeks to establish the affirmative of an issue--carries the burden of proof. Selma, Rome & C. Railroad v. United States, 139 U.S. 560, 567, 11 S.Ct. 638, 640, 35 L.Ed. 266 (1891); Fleming v. Harrison, 162 F.2d 789, 792 (8th Cir.1947).
 
 
 19
 Although the Board identified the proper rule regarding the burden of proof, it incorrectly applied the rule. Holding that NNS was "the proponent of an order ruling that Dr. Loxley's medical fees exceed the prevailing community charges," the Board assigned the burden to NNS. We find the administrative law judge's analysis more compelling. From a procedural perspective, the fact that NNS requested the hearing does not, ipso facto, make it the proponent of the issue. The request for an administrative hearing by NNS was not, nor do the regulations provide for, an appeal from the finding of the Deputy Commissioner. Rather, the administrative hearing is a de novo proceeding which examines the same issue confronted by the Deputy Commissioner. This fact compels us to make two observations: First, it was Loxley, not NNS, who initiated proceedings to clarify whether his rate was within the prevailing rate. Thus, the issue before the administrative law judge was raised by Loxley, not NNS. Second, as the administrative law judge noted, to hold that NNS carried the burden of proof at the hearing would effectively accord "a presumption of correctness to the Deputy Commissioner's ruling--an approach antithetical to the concept of a de novo hearing" before the administrative law judge.
 
 
 20
 The regulations which govern the administrative hearing before the administrative law judge also support these conclusions. Section 702.416, a provision which the Board did not address in reaching its conclusion, states that "[a]t formal hearings held pursuant to Sec. 702.415, the necessary parties shall be the person whose fee or cost charge is in question and the Director, or their representatives." The language of this regulation gives credence to our conclusion that one of the "necessary parties" must bear the burden of proof, and that language identifies a "necessary" party as "the person whose fee or cost charge is in question." Whether the burden is assigned to "the Director" or to the "person whose fee or cost charge is in question" under the portion of the regulations, it is a reasonable conclusion that such burden is not assigned to one in the position of NNS.
 
 
 21
 In making this conclusion as to the burden of proof, we do not purport to determine how a physician should or could sustain this burden at an administrative hearing. In the context of the record before us, however, we find that Loxley did not offer sufficient evidence to prove that his charges fell within the prevailing rate. As previously discussed, Loxley offered little if any useful information as to what constitutes the prevailing rate. At the hearing, he did not offer any evidence attacking the methodology used by NNS. Although Taylor testified that he thought the resulting prevailing rates were low, when asked whether he "had a particular problem" with the use of the 80th percentile, he responded, "I don't, personally, and I don't think the peer review group has any problem with that." Taylor commented that NNS should inform physicians in the area of its practice in determining the prevailing rate, but he testified that he could not dispute the documentation underlying NNS's statistical analysis. At the hearing, counsel for Loxley was willing to stipulate that "Dr. Loxley has not made an exhaustive statistical analysis, and I further stipulate that it would be illegal for him to do so." The only testimony Loxley and Taylor submitted against the NNS determinations of the prevailing rate was their respective comments, unsupported by any evidence, that Loxley's fees were fair.
 
 
 22
 Upon hearing the testimony and examining the evidence, the administrative law judge was not persuaded by Loxley's attempt to show that his rates were within those that prevailed in the community. We find that the record contained sufficient evidence to support the findings of fact of the administrative law judge which thus became "conclusive upon the Board." The Board erred in disregarding these findings of fact.
 
 
 23
 For the reasons indicated, the judgment of the Board is
 
 
 24
 REVERSED.
 
 WIDENER, Circuit Judge, dissenting:
 
 25
 I respectfully dissent.
 
 
 26
 I would affirm on the opinion of the Benefits Review Board, which I find it difficult to improve upon.
 
 
 27
 I here highlight certain parts of that opinion to annunciate my differences with the majority.
 
 
 28
 First. The setting of this case is that Newport News, the employer, refused to make payment in full for bills submitted in 1985 for treatment of work-related injuries sustained by ten of its employees.
 
 
 29
 Second. As a result of this non-payment, Dr. Loxley complained to Deputy Commissioner B.A. Voultsides, who initiated an investigation on the unpaid charges. In the course of his investigation, the Deputy Commissioner requested the opinion of Dr. Jervis S. Taylor, an orthopaedic surgeon and Chairman of the Medical Peer Review Committee of the Eastern Virginia Area, as to the appropriateness of the fees charged by Dr. Loxley. Dr. Taylor's response to the Deputy Commissioner was that he was of the opinion that the charges were low or low/normal. The Deputy Commissioner subsequently advised Newport News that he found Dr. Loxley's charges to be appropriate as reasonable charges in the community where he practices and recommended that payment be made in full.
 
 
 30
 Third. Newport News then requested a hearing challenging the Deputy Commissioner's determination that the fees charged did not exceed the prevailing community rate.
 
 
 31
 Fourth. Thus, Newport News was the moving party in this case and properly assigned the burden of proof under 5 U.S.C. Sec. 556(d), which provides in pertinent part that "the proponent of a rule or order has the burden of proof." Since Newport News is the proponent of an order deciding that the Deputy Commissioner's ruling was in error, it is at once apparent to me that it had the burden of proof and that the Benefits Review Board properly assigned the burden to Newport News.
 
 
 32
 Fifth. Newport News and the Steel Workers Union agreed by contract that the employer would only pay the prevailing rate for physicians' fees, which the contract defined as the 80th percentile of those fees. But Newport News used a data base of all physicians' fees, not physicians' fees of orthopaedic surgeons, of which specialty Dr. Loxley was a member. Thus, the fees which Newport News was willing to pay to Dr. Loxley for medical care, I think, were patently in violation of 33 U.S.C. Sec. 907(g), which provides that such charges are limited "to such charges as prevailing in the community for such treatment," and 20 C.F.R. Sec. 702.413, which provides that the physician's fees "shall not exceed the customary charges of the medical care provider for the same or similar services."
 
 
 33
 While it is true that under Sec. 907(g) a physician's charges are subject to regulation by the Secretary, it is not true that physicians' charges are subject to regulation by Newport News and the employees' union. The Secretary has not regulated the same. Indeed, it does not require any stretching to find that the decision of the Deputy Commissioner, that Dr. Loxley's fees met statutory and regulatory requirements, is an administrative action presumed to be regular and not subject to overturning except for the most extraordinary reasons not present here.
 
 
 34
 I have attached a copy of the decision of the Benefits Review Board to this opinion and subscribe to it.
 
 APPENDIX
 U.S. DEPARTMENT OF LABOR
 Benefits Review Board
 
 35
 1111 20th Street, N.W.
 
 Washington, D.C. 20036
 PUBLISHED
 BRB No. 87-1666
 Dr. Sidney S. Loxley
 
 36
 and
 
 Dr. Lawrence D. Bourgard
 Health Care Providers-Petitioners
 
 37
 v.
 
 
 38
 Newport News Shipbuilding and Dry Dock Company
 
 Self-Insured Employer-Respondent
 DECISION AND ORDER
 
 39
 Appeal of the Decision and Order of John C. Bradley, Administrative Law Judge, United States Department of Labor.John L. Smith, Jr. (Outland, Gray, O'Keefe & Hubbard), Chesapeake, Virginia, for the health care providers.
 
 
 40
 Lawrence P. Postol (Seyfarth, Shaw, Fairweather & Geraldson), Washington, D.C., for the self-insured employer.
 
 
 41
 Before: BROWN, DOLDER, and McGRANERY, Administrative Appeals Judges.
 
 PER CURIAM:
 
 42
 Dr. Sidney S. Loxley and Dr. Lawrence D. Bourgard appeal the Decision and Order (86-LHC-1235; 86-LHC-1232; 86-LHC-1227; 86-LHC-1233; 84-LHC-1644; 85-LHC-1760; 86-LHC-1229; 86-LHC-789; 86-LHC-1234; 86-LHC-1248) of Administrative Law Judge John C. Bradley rendered pursuant to the provisions of the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. Sec. 901 et seq. (the Act). Pursuant to the Board's Order dated August 31, 1989, oral argument was held in Norfolk, Virginia, on October 11, 1989.
 
 
 43
 The sole issue on appeal is whether the administrative law judge properly determined that the fees charged by Dr. Loxley and his associate Dr. Bourgard (hereinafter, collectively referred to as Dr. Loxley), orthopedic surgeons who rendered medical service to injured employees pursuant to the Act, exceed the prevailing community charges for the same or similar services in violation of the Act. See 33 U.S.C. Sec. 907(b), (g) (Supp. V 19867); 20 C.F.R. Secs. 702.413-702.417. We must affirm the findings and conclusions of the administrative law judge which are rational, supported by substantial evidence, and in accordance with law. 33 U.S.C. Sec. 921(b)(3); O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965).
 
 
 44
 The instant appeal arises from a dispute concerning charges for medical services rendered by Dr. Loxley to injured employees pursuant to Section 7 of the Act, 33 U.S.C. Sec. 907.[9] The record establishes that employer refused to make payment in full for bills submitted in 1985 for treatment of work-related injuries sustained by ten of employer's employees. Employer disputed Dr. Loxley's charges for three types of services coded according to the Current Procedural Terminology (CPT), a uniform coding of procedures and services performed by physicians, adopted by the American Medical Association and utilized by Dr. Loxley. At issue in this case are Dr. Loxley's charges for services described by the following three CPT Codes:
 
 CPT Code Description of Service
 
 45
 90060 Office Services, Established Patient, intermediate.
 
 
 46
 90070 Office Services, Established Patient, extended.
 
 
 47
 90220 Initial Hospital Care, Comprehensive history and examination, initiation of diagnostic and treatment
 
 
 48
 programs, and preparation of hospital records.
 
 
 49
 Rather than paying Dr. Loxley's charges in full, employer paid Dr. Loxley only what it determined to be the prevailing rate for such services. In making its determination as to what was an appropriate prevailing community charge, employer adopted medical fee data from its self-insured health benefit plan for its employees and their dependents. Under its health benefit plan, employer pays only the prevailing rate, defined as the 80th percentile, or the level at which 80 percent of the medical charges received by the insurance plan for a particular service are below. In extending its self-insured health benefit plan's prevailing rate limitation to medical charges in compensation claims, employer utilized survey data on the fees charged in 1984 by physicians in the community for the three relevant CPT Codes in insurance claims submitted to employer's health benefit plan. Employer's data base does not distinguish among physicians on the basis of medical specialty; thus, the 80th percentile prevailing rate is based on charges submitted by all physicians across the board and is not confined to charges submitted by only those physicians practicing a particular medical specialty. Employer accordingly compiled data on medical charges submitted to its health benefit plan for services described by CPT Codes 90060, 90070, and 90220,[10] calculated the 80th percentile for each of those CPT Codes, and paid Dr. Loxley only the amount represented by the 80th percentile.[11]
 
 
 50
 After being advised that employer would not make payment in full, Dr. Loxley contacted Deputy Commissioner B.E. Voultsides, who initiated an investigation of the unpaid medical charges. See 20 C.F.R. Secs. 702.407, 702.414(a). In the course of his investigation, the deputy commissioner requested the opinion of Dr. Gervas S. Taylor, an orthopedic surgeon and chairman of the Medical Peer Review Committee for the Eastern Virginia Area, as to the appropriateness of the fees charged by Dr. Loxley. Dr. Taylor responded that each of the charges was normal or low/normal. The deputy commissioner subsequently advised employer that he found Dr. Loxley's charges to be appropriate as reasonable charges in the community where he practices and recommended that payment be made in full. See 20 C.F.R. Sec. 702.414(c).
 
 
 51
 Employer requested a hearing, challenging the deputy commissioner's determination that the fees charged do not exceed the prevailing community rate. See 20 C.F.R. Sec. 702.415. Subsequent to the referral for hearing, employer compiled additional fee data in an attempt to extract charges by orthopedic surgeons for the relevant CPT Codes. After an unsuccessful attempt to obtain a list of Board-certified and Board-eligible orthopedic specialists from local medical societies, employer relied on the listing of orthopedic surgeons in the Peninsula and Norfolk telephone directory yellow pages. Employer isolated the fee data on these orthopedic surgeons contained in its original data base of physicians who had submitted bills under employer's health benefit plan for services described in the relevant CPT Codes,[12] and applied the 80th percentile limitation to the charges of those orthopedists.[13]
 
 
 52
 In his Decision and Order issued May 27, 1987, the administrative law judge noted that fees for medical care rendered under the Act must meet a dual standard, in that they "shall be limited to such charges for the same or similar care ... as prevails in the community in which the medical care provider is located" and "shall not exceed the customary charges of the medical care provider for the same or similar services." See 20 C.F.R. Sec. 702.413.[14] Noting that the statute does not address the question of which party bears the burden of proof with respect to whether a medical fee exceeds the prevailing community rate, the administrative law judge determined that such burden lies with the health care provider. The administrative law judge next determined that "community" was properly defined by employer as the area used by employer in its self-insured health benefit plan.[15] The administrative law judge rejected Dr. Loxley's contention that employer's determination of prevailing community rates is flawed by employer's failure to distinguish among medical specialists, noting that when employer enlarged its original survey data base to break out specific fee data regarding orthopedic surgeons, the result was that Dr. Loxley was paid more for services under two of the three CPT Codes using the general survey data than he would have been paid if employer had considered only the data concerning orthopedic surgeons. Having found unpersuasive the testimony of both Drs. Loxley and Taylor concerning prevailing community rates, the administrative law judge ultimately found that Dr. Loxley failed to sustain his burden of proof that his fees were reasonable. Finding that employer's evidence was persuasive, the administrative law judge noted that the end result would have been the same even had he found that employer had the burden of proof. The administrative law judge rejected Dr. Loxley's argument that employer's fee schedule violates an employee's right pursuant to Section 7(b) of the Act, 33 U.S.C. Sec. 907(b), to choose his attending physician, stating that such right is, by statute, not without exception. The administrative law judge, accordingly, concluded that employer's use of the 80th percentile method is a satisfactory standard for determining prevailing community rates, that the methodology used to establish the 80th percentile was appropriate, and that employer demonstrated that Dr. Loxley's charges exceed the prevailing community rates.
 
 
 53
 On appeal, Dr. Loxley contends that employer's definition of prevailing community charges is arbitrary and constitutes an unauthorized and illegal mandatory fee schedule; that the administrative law judge erroneously found that Dr. Loxley bears the burden of proof as to whether a medical charge exceeds the prevailing community charge; that the administrative law judge's finding that Dr. Loxley's charges exceed prevailing community rates is not supported by substantial evidence; and that the administrative law judge erroneously found it unnecessary to distinguish between fees charged by orthopedic surgeons and fees charged by other physicians in determining prevailing community rates. Employer responds that the administrative law judge's Decision and Order should be affirmed.[16]
 
 
 54
 The relevant provisions of the Act are as follows:
 
 
 55
 SEC.7 (a) The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require.
 
 
 56
 (b) The employee shall have the right to choose an attending physician authorized by the Secretary to provide medical care under this Act as hereinafter provided.
 
 
 57
 * * * * * *
 
 
 58
 The Secretary shall actively supervise the medical care rendered to injured employees, * * * and may, on his own initiative or at the request of the employer, order a change of physicians or hospitals when in his judgment such change is desirable or necessary in the interest of the employee or where the charges exceed those prevailing within the community for the same or similar services or exceed the provider's customary charges.
 
 
 59
 * * * * * *
 
 
 60
 (g) All fees and other charges for medical examinations, treatment or service shall be limited to such charges as prevail in the community for such treatment, and shall be subject to regulation by the Secretary. The Secretary shall issue regulations limiting the nature and extent of medical expenses chargeable against the employer without authorization by the employer or the Secretary.
 
 
 61
 33 U.S.C. Sec. 907(a), (b), (g) (Supp. V 1987).
 
 The pertinent regulation provides:
 
 62
 All fees charged by medical care providers for persons covered by this Act shall be limited to such charges for the same or similar care (including supplies) as prevails in the community in which the medical care provider is located and shall not exceed the customary charges of the medical care provider for the same or similar services. Official state medical fee schedules for workers' compensation charges may be used as guidelines in determining the prevailing community rate where available and to the extent appropriate. The opinion of the OWCP district medical director that a charge by a medical care provider disputed under the provisions of Sec. 702.414 exceeds the charge which prevails in the community in which said medical care provider is located shall constitute sufficient evidence to warrant further proceedings pursuant to Sec. 702.414 and to permit the Director to direct the claimant to select another medical provider for care to the claimant.
 
 20 C.F.R. Sec. 702.413.[17]
 
 63
 Proceedings concerning medical fees are initiated by the complaint of an interested party that a medical charge appears to exceed prevailing community charges for similar services, which is filed with the Director, Office of Workers' Compensation Programs (the Director), or upon the Director's own initiative. The Director is granted the authority to conduct an investigation and to make specific findings as to whether the disputed fee exceeds the prevailing community charges or the provider's customary charges. 20 C.F.R. Sec. 702.414. Section 702.415 of the Act's regulations provides that, following issuance of the Director's findings and proposed action, any interested party has the right to a hearing to be conducted in accordance with 5 U.S.C. Sec. 556 and with the procedures pertaining to adjudication of compensation claims found at 20 C.F.R. Part 702, Subpart C. See also 20 C.F.R. Secs. 702.416, 702.417.
 
 
 64
 As a threshold matter, we hold that the administrative law judge erroneously placed the burden of proof on Dr. Loxley to establish that his fees do not exceed the prevailing community charges. While Section 7 of the Act does not directly address the question of the burden of proof in fee disputes, Section 702.415 of the regulations, 20 C.F.R. Sec. 702.415, provides for the right to a hearing pursuant to 5 U.S.C. Sec. 556. Thus, our disposition of the burden of proof issue under Section 7 and the applicable regulations must be consistent with 5 U.S.C. Sec. 556(d), which provides, in pertinent part, that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." In the case at bar, employer is the proponent of an order ruling that Dr. Loxley's medical fees exceed the prevailing community charges, and, thus, employer bears the burden of proof with respect to this issue. See generally 5 U.S.C. Sec. 556(d); 33 U.S.C. Sec. 907(a), (b), (g) (Supp. V 1987); 20 C.F.R. Secs. 702.407, 702.413-702.417.
 
 
 65
 We further hold that employer has failed to sustain its burden of proving that Dr. Loxley's fees exceed the prevailing community rate, inasmuch as employer's evidence is wholly insufficient to establish prevailing community charges for the medical services performed by Dr. Loxley. Employer's approach to defining prevailing community charges is vulnerable to attack on a number of grounds. First, employer has provided no evidence that the medical fee data relied upon by employer represent a true sample of the medical fees charged by physicians practicing in the community since the charges used in employer's data base were compiled exclusively from medical bills submitted under employer's selfinsured health benefit plan, a contractually negotiated plan between employer and the United Steel Workers, the employee's union bargaining agent. According to the agreement, employer would pay only those charges below the 80th percentile of all billings. Indeed, the administrative law judge recognized that the fees reflected in employer's sample would be distorted in employer's favor if physicians limited the charges submitted to employer's health benefit plan to the maximum 80th percentile level employer would pay.
 
 
 66
 It is interesting, as noted by the administrative law judge, that the purpose of setting a percentile by a health care provider, whether 75, 80, or 90, was to set the portion of a charge that the provider would pay, with liability to pay the balance on the patient. Decision and Order at 6, 17; Transcript of the Hearing at 111, 113, 128. This, of course, is a proper subject for negotiation between a health care provider and a union for the payment of charges under a health benefit plan. It is not applicable, however, under a workers' compensation system such as the Longshore Act which provides that the employer shall furnish all medical, surgical, and other related treatment. 33 U.S.C. Sec. 907(a). Also, as noted by Dr. Loxley on appeal, employer's use of 1984 as a base year for 1985 billings fails to account for any intervening fee increases brought about by inflation or otherwise affecting the prevailing community rates for 1985.[18] Further, no evidence was submitted as to the amount of charges rendered by physicians to patients in the general populations of the Norfolk-Newport News area covered under other plans, whether employer-provided plans or individually acquired plans. Thus, employer has failed to meet its burden of establishing that the fee data collected solely from its own health benefit plan represent an accurate depiction of the applicable prevailing community rates.
 
 
 67
 Second, employer's initial survey of fees charged to its health benefit plan fails to distinguish on the basis of medical specialization and, thus, is inherently flawed as a method of determining prevailing community charges. The Act and its regulations provide that medical fees shall be limited to prevailing community charges for "the same or similar" care. See 33 U.S.C. Sec. 907(b), (g) (Supp. V 1987); 20 C.F.R. Secs. 702.413, 702.414. Employer thus bears the burden of proving that fee data relied upon to establish the prevailing community rates are limited to charges for services which are, in fact, the same as or similar to those services rendered by Dr. Loxley. In the case at bar, employer merely compared Dr. Loxley's charges for the services codified by CPT Codes 90060, 90070 and 90220 with charges made by all physicians in the data base for services classified according to the same three broad CPT Codes, without presenting any evidence that services performed by these other physicians, in fact, constituted the same or similar care as that rendered by Dr. Loxley. We therefore hold that employer's failure to limit its fee data to only those physicians practicing Dr. Loxley's specialty of orthopedic surgery renders its method of determining prevailing community charges insufficient to meet employer's burden under Section 7 of the Act. Employer's subsequent attempt to isolate fee data on orthopedic surgeons also is insufficient to sustain employer's burden, inasmuch as the sample of orthopedic surgeons' charges surveyed is quite limited, and, as in employer's initial survey, the data pertaining to orthopedic surgeons are limited to those doctors submitting charges to employer's health benefit plan. In light of our holdings that employer bears the burden of establishing that Dr. Loxley's fees exceed the prevailing community charges and that employer's evidence is insufficient to sustain its burden, the administrative law judge's determination that Dr. Loxley failed to demonstrate that his charges are within the prevailing community rates is reversed.
 
 
 68
 Accordingly, the Decision and Order of the administrative law judge is reversed.
 
 
 69
 SO ORDERED.
 
 
 70
 /s/ James F. Brown
 
 JAMES F. BROWN
 Administrative Appeals Judge
 
 71
 /s/ Nancy S. Dolder
 
 NANCY S. DOLDER
 Administrative Appeals Judge
 
 72
 /s/ Regina C. McGranery
 
 REGINA C. McGRANERY
 Administrative Appeals Judge
 
 73
 Dated this 28th day of February 1990.
 
 
 
 [1]
 The Act limits fees payable "to such charges as prevail in the community for such treatment." 33 U.S.C.A. Sec. 907(g) (West 1986). Under the governing regulation, such charges "shall not exceed the customary charges of the medical care provider for the same or similar services." 20 C.F.R. Sec. 702.413 (1990)
 
 
 [2]
 The services at issue are coded according to the Current Procedural Terminology (CPT), a uniform coding used in "identifying, describing, and coding medical, surgical, and diagnostic services performed by practicing physicians." A.M.A. Physicians' Current Procedural Terminology at iii (4th ed. 1986). The coding system is "the most widely accepted nomenclature for the reporting of physician procedures and services under government and private health insurance programs." Id
 
 
 [3]
 Using charges for specific CPT codes which were submitted under its health benefits plan during the previous year, NNS calculated the amount below which 80 percent of the charges fell. NNS reimbursed in full only those fees at or below the 80th percentile
 
 
 [4]
 The evidence on this point included Taylor's testimony that orthopedic surgeons' charges differ from those of other specialists or primary care physicians for the services that fall within the same CPT codes, and documents submitted by NNS showing that other carriers, such as Blue Cross Blue Shield, do not differentiate by specialists
 
 
 [5]
 For the purposes of the hearing, NNS conducted a survey of fees submitted only by "specialists" to its health care plan. NNS defined "specialists" by selecting names listed under "orthopedic surgeons" in the yellow pages. The results of this survey indicated that the rate at the 80th percentile for the specialists charges was below the same rate calculated with respect to all fees submitted in two of the three CPT codes at issue
 We do not base our conclusion that differentiation by specialty is not mandated by the Act on the results of this second survey by NNS. The Board disregarded the survey, stating that it was insufficient because it was limited to those charges submitted to the NNS health benefit plan. We simply find that the results of the survey are immaterial as the nature of the services performed, not the status of the medical care provider, are relevant in determining the prevailing rate under the Act.
 
 
 [6]
 See 33 U.S.C.A. Sec. 907(g) (West 1986) ("All fees ... shall be limited to such charges as prevail in the community for such treatment...."); 20 C.F.R. Sec. 702.413 (1990) ("All fees ... shall be limited to such charges for the same or similar care (including supplies) as prevail in the community ... and shall not exceed the customary charges of the medical care provider for the same or similar services."); and 20 C.F.R. Sec. 702.414 (1990) (discussing "similar treatment")
 
 
 [7]
 At the hearing, Taylor indicated the difficulty in defining "specialist." Although he indicated that one determining factor would be whether a physician was "Board-certified" or "Boardeligible," he stated that if he had to determine who in the area was "Board-eligible," he would "Simply go around and talk to people." The burdensome task of defining "specialist" is, moreover, unnecessary, given the fact that the CPT code system allows for the use of modifiers which help to distinguish a type of medical care. By using a modifier, a physician can indicate that a particular service was altered in some respect even though its code number was not changed. See A.M.A. Physicians' Current Procedural Terminology at xi-xiii (4th ed.1986)
 
 
 [8]
 Use of the prior year's rates does not account for the effects of inflation or other factors which might increase fees. However, as the administrative law judge noted, Blue Cross Blue Shield also uses rates from the previous year, in what is the most practicable way to establish such rates. Trying to do so on a monthly, or other short-term, basis could well not produce enough billing to constitute a valid sample
 
 
 [9]
 The parties stipulated that Dr. Loxley did, in fact, perform the services for which charges were submitted and that the medical services rendered were for work-related injuries
 
 
 [10]
 Dr. Loxley's charges and payment received are as follows:
 CPT Code Dr. Loxley's Charge Employer's Payment
 -------------------------------------------------
 90060 $ 38.50 $ 25.00
 90070 52.00 35.00
 90220 122.00 110.00
 
 
 [11]
 Employer's data base includes approximately 1,700 physicians. The survey includes 38,792 charges for CPT Code 90060, 4,834 charges for CPT Code 90070, and 3,097 charges for CPT Code 90220
 
 
 [12]
 The subsequent survey of orthopedic surgeons contains 520 charges for CPT Code 90060, 650 charges for CPT Code 90070, and 74 charges for CPT Code 90220
 
 
 [13]
 Employer's fee data on orthopedic surgeons are as follows:
 Dr. Loxley's Amount Paid 80th Percentile
CPT Code Charge by Employer Orthopedic Surgeons
Fees
 90060 $ 38.50 $ 25.00 $ 30.00
 90070 52.00 35.00 30.00
 90220 122.00 110.00 100.00
 
 
 [14]
 It is noted that the administrative law judge in the instant case found that Dr. Loxley's charges exceeded the prevailing community rate, the first prong of the standard, not that they exceeded his customary charges, the second prong. Employer does not contend on appeal that the administrative law judge also should have found that Dr. Loxley's charges exceeded his customary charges
 
 
 [15]
 The definition of "community" applied by the administrative law judge is not challenged by Dr. Loxley on appeal
 
 
 [16]
 Dr. Loxley, in his reply brief, contends that the statement of facts contained in employer's response brief misrepresents Dr. Taylor's hearing testimony. We agree. First, Dr. Loxley correctly asserts that, contrary to employer's contention that Dr. Taylor changed his opinion as to the charge for an intermediate office visit, the record is clear that the confusion over this charge was due to an error on the part of the deputy commissioner. Next, as pointed out by Dr. Loxley, employer's conclusion that Dr. Taylor was of the opinion that physicians' charges should be the same irrespective of their medical specialty is wholly unsupported by the testimony of Dr. Taylor cited by employer. Finally, as Dr. Loxley correctly maintains, Dr. Taylor's testimony that he could not dispute the documentation underlying employer's statistical analysis but that employer's figures seem extremely low does not support employer's conclusion that Dr. Taylor was in agreement with employer's method of statistical analysis
 
 
 [17]
 It is noted that 20 C.F.R. Sec. 702.413 provides that official state medical fee schedules for workers' compensation charges may be used as guidelines in determining the prevailing community rate. Section 702.413 additionally provides for the issuance of opinions of the OWCP district medical director whether charges exceed the prevailing charges in the community. The parties agreed at oral argument that Virginia law has no medical fee schedule and that no opinion was rendered by the OWCP district medical director
 
 
 [18]
 The increase in the cost of medical care in 1984 was 6.4 percent and in 1985 was 6.1 percent. Consumer Price Index (CPI-U) Medical Care, U.S. Department of Labor, Bureau of Labor Statistics