**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,**

v.

**Curtis TANN; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 87–3082.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1988.

Decided March 9, 1988.

Lawrence Philip Postol (Forest A. Nester, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., on brief), for petitioner.

Jonathan Andrew Smith–George (Patten, Wornom & Watkins, Newport News, Va., on brief), Michael Scott Hertzig, U.S. Dept. of Labor, Office of the Sol. (George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Washington, D.C., counsel for Longshore, on brief), for respondents.

Before WIDENER and WILKINSON, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

Newport News Shipbuilding & Dry Dock Company (NNS) appeals a decision of the Benefits Review Board reversing the decision of the Administrative Law Judge and holding the claimant in this case permanently and totally disabled. The Board held that NNS had failed to meet its burden of establishing the availability of suitable alternate employment. Because the Board's decision is inconsistent with the statutory purposes of the Longshore and Harbor Workers' Compensation Act and with this court's prior holdings, we reverse and remand with directions to reinstate the decision of the Administrative Law Judge.

## I.

Curtis Tann injured his knee on the job at NNS, and both parties agree that he is unable to return to his job as a painter there. Tann continues to have problems with his knee. His doctors, however, have stated that he is able to do light work that

does not require extensive lifting, climbing, walking, or standing. Tann himself testified that he could do any job that met these restrictions. Tann has a high school diploma, and testified that he would be able to perform a desk job requiring reading, writing, and arithmetic.

The record shows that Tann was released for work by his doctors as of November 1981. Tann attempted to work as a farmhand in 1980 and 1981, but was unable to perform the heavy labor required in the job. Tann attempted to find work with one of his previous employers, Georgia Pacific Co., but no job openings were available. Tann also consulted the North Carolina Department of Social Services, and was told that most employers in the area would be unwilling to hire him because of the liability risk posed by his disability.

Tann filed a claim for permanent total disability in March, 1981. The case was assigned to an ALJ in July, 1982. At that time, NNS had a vocational expert interview Tann to determine his capacity for work and conduct a survey of the area to determine if there was available work that Tann could perform. The expert did not find any openings in Murfreesboro, where Tann resides, but found several openings in Suffolk, Virginia, about twenty-five miles away. The openings were all for self-service gas station cashiers, and were within Tann's work restrictions. Each of the proprietors expressed willingness to hire an employee with a disability, and one had previously hired an employee who had lost part of his foot. Each of the positions had been open after November 1981, during the time that Tann was medically available for work. None of the jobs, however, was actually open at the time the expert conducted the survey.

The ALJ found that the employer had satisfied its burden of showing that alternative available work existed for Tann, and awarded only partial permanent disability in the amount of thirty percent. The BRB reversed, holding that the employer, in order to meet its burden, must show that jobs existed at the time the employment survey was taken; a survey of past openings was not sufficient. NNS appeals.

## II.

The rule of present availability established by the BRB is inconsistent with our prior holdings and with the statutory purposes of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1983). The general standard governing disability claims is as follows: First, the employee bears the burden of showing that he is unable to return to his former employment. Tann's inability to return is undisputed here. Second, the employer bears the burden of showing the existence of suitable alternative employment that would be available to the claimant if he diligently sought it. Finally, if the employer has met this burden, the claimant may still establish disability by showing that he has diligently sought appropriate employment, but has been unable to secure it. *See Trans–State Dredging v. BRB*, 731 F.2d 199, 200 (4th Cir.1984); *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs*, 592 F.2d 762, 765 (4th Cir. 1979).

The BRB held that an employer, in order to show the existence of alternative available employment, must find jobs that are open at the time the employment survey is taken. In support of this rule, the BRB cited *Trans–State, supra. Trans-State*, however, *precludes* the standard that the BRB imposed here. In *Trans–State*, we reversed the BRB's finding that the expert's information in that case was untimely. The BRB had held that because the expert conducted his survey five months before the hearing, the information was stale, and not sufficient to meet the employer's burden. This court, however, disagreed, and stated that:

the employer is entitled to attempt to establish that at the critical times there were jobs reasonably available within Turner's capabilities and for which Turner was in a position to compete realistically had he diligently tried. We find that it would be unreasonably burden-

some and restrictive to define 'critical times' as solely the period immediately prior to the administrative hearing." *Trans–State,* 731 F.2d at 202 (*quoting New Orleans (Gulfwide) Stevedores v. Turner,* 661 F.2d 1031, 1043 (5th Cir. Unit A 1981)). We fail to see how the BRB could have read this language as supporting authority for the rule it imposed. Jobs which were available to claimant during the period he was able to work may often become unavailable at the time of the market survey conducted for the administrative hearing. Applying the *Trans–State* rationale to Tann's case, there is no basis for requiring that the jobs found by the expert be available at the time the survey was conducted so long as the jobs were available during the "critical period" during which the claimant was able to seek work.

■ The requirement of present availability is also inconsistent with the policy behind the compensation system. The statutory standard for disability turns on the claimant's *capacity* for work, not actual employment. *See* 33 U.S.C. § 908(c)(21) (1983). There is no reason why capacity cannot be shown with a retrospective survey. As we held in *Trans–State,* there is no requirement that the vocational expert must actually contact potential employers to inquire whether they would hire someone of the claimant's general age, background, and disability, or convey information about job openings to the claimant. *See* 731 F.2d at 201. The purpose of the vocational expert's survey is not to find a job for the claimant, but to see whether suitable work is available for which the claimant could compete realistically. For this reason, the employer may meet its burden of showing available alternative employment by presenting evidence of jobs which, although no longer open when located, were available during the time the claimant was able to work.

### III.

■ We direct that on remand an order be entered reinstating the decision of the Administrative Law Judge. We must uphold the ALJ's decision so long as it is supported by "substantial evidence." 33 U.S.C. § 921(b)(3) (1983). On review, the ALJ's findings may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited. *See Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs,* 681 F.2d 938, 941 (4th Cir.1982). Applying this standard, we find no basis for reversing the ALJ's decision.

■ First, we find substantial evidence in the record to support the finding that the jobs found by NNS's vocational expert constituted available alternative employment. Six positions were available with one of the Suffolk employers during August of 1982, ten months after Tann was released for work. Both of the employers contacted by the expert specifically stated their willingness to hire someone with Tann's disability, and one of the employers had previously hired a disabled person. There is ample evidence in the record that the duties in these positions were within Tann's medical restrictions.

■ Second, proper deference to the ALJ's opinion leads us to reject Tann's contention that the jobs found by the vocational expert were not geographically available. We agree with Tann that the ALJ's findings could have been clearer, and that Tann's pre-injury commute was of questionable relevance. Nonetheless, it is clear on the record that Tann's physical disability does not prevent him from driving the twenty to twenty-five miles from his home to the Suffolk area. There is substantial evidence in the record that the Suffolk employment was geographically available to Tann.

■ Finally, we find no basis for overturning the ALJ's decision on the ground that Tann made diligent efforts to obtain work. Tann cites his work as a farmhand, his attempt to find work at Georgia Pacific, and his visit to the North Carolina Social Services Department. Again, the ALJ's

finding was not as clear and explicit as it might have been. It is obvious, however, that the farm work was unsuitable for Tann, and hence could not be counted as a diligent attempt to find appropriate work. Most importantly, Tann conceded at the ALJ hearing that during the two and one-half year period prior to the hearing he had made absolutely no attempt to find work, despite his own admission that he would be able to work in any job within his medical restrictions. The ALJ specifically mentioned the claimant's "obligation to seek work," and we interpret his failure to discuss Tann's attempts to work as a conclusion that these attempts did not constitute a "diligent effort." In light of the evidence in the record, we reverse the decision of the Benefits Review Board and remand with instructions to reinstate the decision of the Administrative Law Judge.

REVERSED AND REMANDED.