**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES M. CHAMBLEE,
Petitioner,

v.

No. 96-1100

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
Respondent.

On Petition for Review of an Order
of the Benefits Review Board.
(92-2477)

Argued: March 5, 1997

Decided: June 24, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and BLACK, Senior United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Elliott Walsh, RUTTER & MONTAGNA, L.L.P.,
Norfolk, Virginia, for Petitioner. Benjamin McMullan Mason,
MASON & MASON, P.C., Newport News, Virginia, for Respondent.
**ON BRIEF:** Matthew H. Kraft, RUTTER & MONTAGNA, L.L.P.,
Norfolk, Virginia, for Petitioner.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner James M. Chamblee ("Chamblee") appeals a decision of the Benefits Review Board ("BRB") affirming the decision of an Administrative Law Judge ("ALJ"), which involved his workers' compensation claim under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950 (West 1986 & Supp. 1997). The ALJ's Decision and Order required Chamblee's employer to compensate Chamblee, pursuant to 33 U.S.C. § 908(c)(1), for a twenty-five percent permanent partial disability due to an injury to Chamblee's left arm. Chamblee contends that the ALJ erred in determining the extent of Chamblee's disability by adopting the impairment rating of one of the many physicians who examined him. This, in Chamblee's view, constituted a failure on the part of the ALJ to consider all the relevant evidence necessary to make a proper assessment of Chamblee's disability and violated the pertinent provisions of the LHWCA.

I.

On July 25, 1985, Chamblee suffered a work-related injury to his elbow while employed by the Newport News Shipbuilding and Dry Dock Company ("NNS"). Chamblee, a twenty-three year employee of NNS, has worked for most of his career as a shipfitter. As a shipfitter, Chamblee's work entailed, to a great extent, repair work and tank work on vessels in the shipyard. To do this work, Chamblee was required to lift weights, climb vertical ladders, and operate a variety of heavy tools. As a result of his injury, and the related pain, Chamblee no longer has the physical capacity to perform the same job at work. NNS, however, has apparently found light duty work for Chamblee since his injury.

As part of the extensive medical treatment Chamblee received after

2

his injury, a series of doctors offered assessments of Chamblee's impairment.* Chamblee was first treated by Dr. Bartlett from August 1985 to March 1987, and again from January 19, 1990 to February 13, 1992. Dr. Bartlett made two assessments of the level of Chamblee's impairment: first, on March 6, 1986, Dr. Bartlett judged Chamblee had "about a 5% permanent partial disability" to his left arm, and later, on March 18, 1987, Dr. Bartlett found Chamblee's injuries warranted a "35% disability" rating. A NNS clinic referred Chamblee to Dr. Giannotto who treated him from March 31, 1987 until he resumed treatment with Dr. Bartlett. Dr. Giannotto found:"limited use of the left upper extremity" and concluded that "the disability rating would be a permanent partial disability of 10% referrable to the left upper extremity." Lastly, Dr. Neff examined Chamblee on January 8, 1991. On March 12, 1992, at NNS's request, and based on his notes of Chamblee's prior visit and X-rays, Dr. Neff stated in a letter: "I would rate Mr. Chamblee as having a twenty-five percent permanent impairment to his left upper extremity."

In accordance with the LHWCA, Chamblee filed a claim for compensation benefits. NNS voluntarily compensated Chamblee at a ten percent permanent partial disability rate. Chamblee, not satisfied with this compensation, requested a hearing on the issue of the extent of his permanent partial disability, claiming he was entitled to compensation at a fifty percent permanent partial disability rate, and a formal hearing was held before the ALJ on March 5, 1992. The ALJ issued a Decision and Order dated July 24, 1992 in which he reviewed the aforementioned medical opinions and awarded benefits based on a finding that Chamblee had a twenty-five percent permanent partial disability to his left arm.

Chamblee filed a timely Notice of Appeal to the BRB. After briefing on the issues by the parties, the BRB issued a Decision and Order dated November 28, 1995 affirming the ALJ. This appeal followed.

_____

*The doctors involved in this case used both the"permanent partial disability" language of the LHWCA, and the term"impairment." It is unclear from the record whether or not the doctors involved in this case used these terms in a synonymous fashion, or whether they used these terms with an appreciation of the differences between them under the LHWCA.

II.

The ALJ's decision must be upheld so long as it is supported by substantial evidence. Newport News Shipbuilding and Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988)."On review, the ALJ's findings may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have empha-sized the scope of review of ALJ findings is limited." Id. Conse-quently, we must affirm the BRB's decision "if it correctly concluded that the ALJ's findings are supported by substantial evidence and are in accordance with the law." P & M Crane Co. v. Hayes, 930 F.2d 424, 428 (5th Cir. 1991).

Chamblee attempts to create a question of law for this Court to review by asserting that the ALJ was unaware of the difference between a LHWCA disability assessment and an impairment rating, and hence, failed to consider all the relevant evidence necessary to make an independent assessment of his disability. Under the LHWCA, "disability" is defined as:

> incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment; but such term shall mean permanent impairment, determined (to the extent covered thereby) under the guides to the evaluation of permanent impairment promulgated and modified from time to time by the Ameri-can Medical Association, in the case of an individual whose claim is described in section 910(d)(2) of this title.

33 U.S.C. § 902(10). Applicable LHWCA caselaw demonstrates that disability is an inclusive concept which recognizes the economic effects of a physical impairment. See, e.g., Owens v. Traynor, 274 F. Supp. 770, 774 (D. Md. 1966) ("Anatomical impairment and indus-trial disability must be distinguished."), aff'd, 396 F.2d 783 (4th Cir.), cert. denied, 393 U.S. 962 (1968). Pointing to this principle, Cham-blee objects to the ALJ's reliance on Dr. Neff's twenty-five percent impairment rating as an appropriate measure of Chamblee's disabil-ity. Chamblee, understandably, would have preferred that the ALJ use

4

Dr. Neff's impairment rating as a beginning point from which to award even greater compensation based on other evidence.

The fact that the ALJ credited the "impairment" rating of Dr. Neff and awarded Chamblee compensation based on a twenty-five percent permanent partial disability does not, however, lead to the conclusion that the ALJ improperly equated disability and impairment, or otherwise shirked his adjudicatory duties. Not only did the ALJ enunciate the proper definition for disability under the LHWCA-- citing Owens, 274 F. Supp. at 774, for the proposition that "[d]isability is an economic concept based on a medical foundation" -- but the ALJ's opinion properly noted and considered a variety of evidence in addition to Dr. Neff's medical opinion, including Chamblee's testimony with regard to pain and suffering, and job restrictions due to his injury. The ALJ is entitled to weigh all the evidence, medical or otherwise, before him and to rely on that evidence which he finds most credible. Todd Shipyards Corp. v. Donovan, 300 F.2d 741, 742 (5th Cir. 1962); Ennis v. O'Hearne, 223 F.2d 755, 758 (4th Cir. 1955). Moreover, while adherence to an impairment rating, consistent with the American Medical Association guidelines, is not required in a scheduled loss case, neither is the fact-finder constrained to any set technique for the determination of a disability rating. Mazze v. Holleran, Inc. & State Ins. Fund, 9 BRBS 1053, 1055 (1978); see also Maryland Shipbuilding and Drydock Co. v. Director, Office of Workers' Compensation Programs, 618 F.2d 1082 (4th Cir. 1980) (analyzing a claim brought under Section 908(f) of the LHWCA which also utilizes the term "disability," and finding that the percentages adduced from the medical testimony can be representative of the entire disability). As there is no evidence in this record which suggests that the ALJ's twenty five percent disability rating did not accurately reflect the entire compensable disability, the BRB correctly found the ALJ's award supported by substantial evidence.

AFFIRMED

5