**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GLOBAL ASSOCIATES, INCORPORATED,
Petitioner,

v.

JAMES SUMNER; DIRECTOR, OFFICE OF

No. 97-2764

WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(97-599)

Submitted: May 5, 1998

Decided: July 1, 1998

Before HAMILTON and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Susan B. Potter, VANDEVENTER BLACK, L.L.P., Norfolk, Vir-
ginia, for Petitioner. Robert E. Walsh, RUTTER & MONTAGNA,
L.L.P., Norfolk, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Petitioner Global Associates ("Global") seeks review of an order of the Department of Labor's Benefits Review Board ("the Board"). The Board affirmed the decision of the administrative law judge ("ALJ") to grant James Sumner's claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901-950 (West 1986 & Supp. 1998), for temporary total disability benefits. Global contends that the Board erred in finding that (1) Sumner was unable to perform his usual work duties as of April 19, 1994 and (2) Global failed to show the availability of suitable alternate employment. Because substantial evidence supports the findings of the ALJ in awarding temporary total disability benefits, we affirm.

Sumner worked as a ship maintenance crew leader with Global. The crew leader position required him to perform all the duties of a laborer in addition to overseeing four to five other crew members. The job description required that a crew leader"[m]ust be physically able to handle and lift heavy objects (75 lbs. or over)" and "[m]ust be physically able to climb 50-75 feet."

On October 14, 1993, Sumner suffered an injury to his back while on the job. At the recommendation of a physician, Global assigned Sumner clerical duty. In January 1994, Dr. Blasdell, an orthopedic surgeon and Sumner's treating physician, released Sumner to full duty work. In February 1994, Sumner aggravated his injury when he fell while working at a height of 8 to 10 feet after his left leg "gave out." Dr. Durica, Blasdell's associate, recommended that Sumner avoid climbing. As a result, he was reassigned to clerical duty.

On February 18, 1994, Blasdell examined Sumner and advised him that he could return to full duty with the exception of no climbing as of February 21. Blasdell also referred Sumner to Dr. Grant, a neuro-

2

surgeon. On February 22, Grant examined Sumner and determined that he should refrain from climbing or carrying heavy weights, as he may injure himself or a co-worker. Grant recommended that he continue to do only light-duty clerical work. On March 4, Blasdell examined Sumner again and recommended that he continue with the same work restriction against climbing.

On March 15, Sumner was given the job of driving a van to shuttle crews to the shipyard in addition to retaining some of his clerical duties. The job required that he make three or four daily trips of approximately three miles over railroad tracks and potholes. After the first day of driving the van, Sumner reported to his supervisor, Kenneth Engle, that driving the van was aggravating his back pain. Engle asked Sumner to try to continue driving the van, which Sumner did the following day. After the second day, Sumner reported to Engle that the driving caused him to experience increased back pain.

The next day, Sumner and Engle met with Assistant Maintenance Manager Dale Bruce Raxter and Health, Safety, and Quality Assurance Manager Edwin Dudley regarding his continued operation of the van. Sumner was reassigned to his clerical position and was instructed to have his job restrictions updated by Blasdell. According to Dudley and Engle, the only job restriction was that Sumner could not do any climbing. Sumner was unable to make an appointment with Blasdell because he was out of town.

On March 21, Sumner was placed on temporary leave of absence due to his injury because there was no other light-duty work available. He was instructed not to return to work until he was "one hundred percent" and able to perform the job he was hired to do. At Blasdell's recommendation, Sumner went to the Work Center to participate in a work conditioning program. Two reports issued by the Work Center stated that Global's safety director disclosed that Sumner would not be expected to lift in excess of fifty pounds without assistance and that driving would be limited to short distances. The Work Center recommended that Sumner return to his customary work within these guidelines. Blasdell then released Sumner to return to full-duty work with the understanding that he would be working within the limits suggested by Global's safety director. Blasdell instructed Sumner to see him in four weeks for a follow-up visit.

3

On April 19, Sumner reported to work. He met with Maintenance Manager William Beale. Beale asked Sumner why it was necessary to visit Blasdell again. Sumner told Beale that Blasdell wanted to find out how he would do in his crew leader position. Beale conferred with Hill and then instructed Sumner to go home and not return to work until he was "one hundred percent." Hill changed his mind and decided to terminate Sumner's employment.

At the hearing before the ALJ, Sumner contended that he told Beale on April 19 that he was ready to resume his prior crew leader position. In contrast, Beale testified before the ALJ that Sumner believed he was unable to work, in spite of Blasdell's recommendation.

Our review of the Board's decision is limited to a search for errors of law and deviations from the statutory conclusiveness afforded to those factual findings by the ALJ that are supported by substantial evidence. See Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988). Substantial evidence, described as "more than a scintilla but less than a preponderance," is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Elliott v. Administrator, Animal & Plant Health Inspection Serv., 990 F.2d 140, 144 (4th Cir. 1993) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. See See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994).

A claimant for disability benefits must first establish total disability by demonstrating his inability to return to his former employment. The burden then shifts to the employer to rebut disability by proving the availability of suitable alternative employment upon a reasonably diligent search by the claimant. See Tann, 841 F.2d at 542.

We find that there was substantial evidence to support the ALJ's finding that Sumner could not return to his former position. Global contends that Blasdell found Sumner was able to return to full-duty work. Blasdell testified that he recommended Sumner for full-duty work with the understanding that he would not be required to lift any-

4

thing heavier than fifty pounds. However, the crew leader position required Sumner to lift up to seventy-five pounds. Although the evidence suggests that Sumner was willing to return to his crew leader position without any limitations, he was actually not cleared for such work. As to whether Sumner refused to return to work or was prevented from returning to work by Global, we defer to the ALJ's credibility determinations and resolution of factual inconsistencies. See Director, OWCP v. Newport News Shipbuilding & Drydock Co., 134 F.3d 1241, 1246 (4th Cir. 1998); See, 36 F.3d at 385.

We also find that there was substantial evidence for the ALJ to conclude that Global failed to show that there was suitable alternative employment available upon a reasonably diligent search by the claimant. Specifically, Global contends that Sumner could have either driven the van or, as crew leader, delegated many of the strenuous tasks to his subordinates. There is nothing in the evidence to indicate that Sumner was given the opportunity to drive the van on April 19, or that he was given the opportunity to be reassigned to any less physically demanding position. Furthermore, there is no evidence that Sumner could have delegated some of his tasks. The job description does not give Sumner such authority and there is nothing in the record to indicate that Sumner was aware that he could delegate such authority. Furthermore, this is inconsistent with Global's own request that Sumner not return to work until he was "one hundred percent."

Accordingly, we affirm the Board's decision and order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

5