**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SEACO, INCORPORATED,
Petitioner,

v.

No. 98-1498

SONNY DICKERSON; STRACHAN
SHIPPING COMPANY,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(97-734)

Argued: March 5, 1999

Decided: August 23, 1999

Before WIDENER and NIEMEYER, Circuit Judges, and
BROADWATER, United States District Judge for the Northern
District of West Virginia, sitting by designation.

_____

Affirmed in part and reversed and remanded in part by unpublished
per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Edward Darling, SINKLER & BOYD, P.A.,
Charleston, South Carolina, for Petitioner. Edward Paul Gibson,
RIESEN LAW FIRM, L.L.P., North Charleston, South Carolina, for
Respondents. **ON BRIEF:** Joseph D. Thompson, III, SINKLER &
BOYD, P.A., Charleston, South Carolina, for Petitioner.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case comes before the court on appeal from a decision of the United States Department of Labor Benefits Review Board ("Board"). The Board affirmed the Administrative Law Judge's ("ALJ") decision granting relief to Sonny Dickerson ("claimant") under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.§ 901 et seq. ("Act"). We find that the Board's decision should be affirmed in part and reversed and remanded in part.

The case originated as two separate claims for compensation benefits under the Act, arising out of (1) an accident that occurred on April 26, 1992 while the claimant was working for Seaco Incorporated ("Seaco") and (2) an accident that occurred one year later on April 27, 1993 while the claimant was employed by Strachan Shipping Company ("Strachan").

Following a formal hearing on October 17, 1995, the ALJ issued a Decision and Order dated January 6, 1997. The ALJ also submitted a Supplemental Decision and Order Awarding Attorney Fees dated March 13, 1997.

Seaco appealed the ALJ's decisions to the Board pursuant to 33 U.S.C. § 921(b). Both of the ALJ's decisions were affirmed by a Decision and Order of the Board dated February 18, 1998.

Seaco petitioned this court for review of the Decision and Order of the Board. This court is vested with subject matter and appellate jurisdiction pursuant to 33 U.S.C. § 921 and Rules 4(a) and 15(a) of the Federal Rules of Appellate Procedure.

On appeal, Seaco raises several issues. Inasmuch as the issues overlap, we will address them as follows: (1) whether the Board prop-

2

erly affirmed the ALJ's conclusion that the claimant was permanently and totally disabled; (2) whether the Board properly affirmed the ALJ's conclusion that the employer was not entitled to a credit for special payments received by the claimant during his period of temporary disability; and (3) whether the Board properly affirmed the ALJ's decision and order awarding the claimant attorney's fees.

I.

In 1975, the claimant began working on the waterfront in Charleston, South Carolina. While working on the waterfront, the claimant performed numerous longshore jobs including top man, hustler driver, lift driver, tie on man, and latching. Prior to April 26, 1992, he was without any physical restrictions and was fit for full duty as a longshoreman. As well, claimant had at most an eighth grade education.

At some point before the claimant's initial injury, he was a member of a work gang which was permanently assigned to work for Strachan. On April 26, 1992, the claimant was able to "catch" work with Seaco because his gang had not been called to work for Strachan.[1] On that day, the claimant slipped and fell a distance of seven to eight feet to the deck of a vessel. He landed on his back hitting the top of a turnbuckle on the deck.

On the evening after the fall, the claimant went to a local emergency room where he was treated by Dr. Weissglass. After initial treatment, the claimant contacted Dr. Feller, his family physician. While continually providing treatment to the claimant, Dr. Feller referred him to Dr. Khoury, a neurosurgeon. Dr. Khoury initially diagnosed chronic back strain and scheduled the claimant for three weeks of physical therapy. Serial axial scans showed bulging at L3-4 and L4-5, with central disc bulging/protrusion at L5-S1. On June 24, 1992, Dr. Khoury performed a lumbar spine CT scan and myelogram. The final impression from these tests was central disc bulging at L3-L4 and L4-L5, coupled with hypertrophy of the ligamentum flava and mild concentric narrowing of the spinal canals. There were

_____

[1] On the Charleston waterfront, if a gang is not called to work, the longshoremen can "catch" with other gangs who need help.

no signs of asymmetric or foraminal impingement nor any significant bony abnormalities in the lumbosacral spine.

In September of 1992, Seaco sent the claimant to Dr. Poletti for an examination. Dr. Poletti diagnosed the claimant as having low back pain with left leg pain and numbness. Dr. Poletti prescribed physical therapy and functional rehabilitation with Dr. Warren. This treatment provided positive results.

Seaco voluntarily paid the claimant temporary total disability benefits at a rate of $699.96 per week beginning in April 1992. On November 12, 1992, the claimant returned to work. He quickly experienced leg and back pain. He then returned to Dr. Warren for work rehabilitation. During this period, Seaco voluntarily paid the claimant temporary total disability benefits in the same amount.

On March 24, 1993, the claimant once again returned to work. On April 27, 1993, the claimant caught work with a gang working for Strachan. On that day, he fell about seven feet into the hold of a ship. The claimant contended that he was having pain including numbness of the right leg prior to the fall. Further, the claimant testified that his back felt about the same after the fall.

After this second fall, the claimant went to a local emergency room for treatment. He was diagnosed as having mild deformity of the distal tibia, with probable degenerative change and post-traumatic reaction.

On May 3, 1993, the claimant was treated by an orthopaedic surgeon named Dr. Wagner. In his final report date May 25, 1993, Dr. Wagner diagnosed the claimant as having chronic low back pain. Dr. Wagner also opined that the claimant was totally and permanently disabled.

The claimant was next examined by Dr. Schimenti, a consultant in neurology and medical disability assessment. After a review of the claimant's medical records, Dr. Schimenti opined that the claimant was physically unable to return to his former employment as a longshoreman.

4

On August 3, 1993, by way of an OWCP-5 Work Restriction Evaluation Form, Dr. Poletti opined that the claimant reached maximum medical improvement on July 13, 1993. He also indicated that the claimant would need further vocational rehabilitation to return to work. Dr. Poletti also placed the following restrictions on the claimant's activities: lift restriction between 20 and 50 pounds; no pushing; no pulling; no twisting; and only intermittent sitting, walking, lifting, bending, squatting, climbing, or kneeling.

Benjamin Flowers, President of the Local 1422 of the International Longshoreman's Association ("ILA"), testified by deposition in this case. His testimony concerned exemptions under ILA Local 1422 work rule number 10.[2] He stated that the exemption is only temporary and is only given under special circumstances. Further, Flowers testified that there is no light duty on the waterfront for a full time longshoreman.

Jean Hutchinson testified on behalf of the claimant as a vocational rehabilitation expert regarding the claimant's employability following his injuries. Based on a physical examination and review of the claimant's history, Hutchinson determined that he had an IQ of 68, was functionally illiterate, and had very low math skills. Using these determinations along with the claimant's physical limitations, Hutchinson opined that, to a reasonable degree of vocational certainty, the claimant was physically unable to work as a longshoreman and unemployable in the open job market.

Lee Woodward, who was originally retained by the carriers for the employers, also testified as a vocational rehabilitation expert. She

_____

[2] ILA Local 1422 work rule number 10 provides:

> (10) OLDER MEN AND MEMBERS WITH PHYSICAL AND MEDICAL PROBLEMS CAN BE EXEMPT FROM SPECIFIC TYPES OF WORK, PROVIDED HOWEVER, THAT SUCH EXEMPTION CONTINUES UNTIL SUCH TIME HE LETS THE UNION KNOW THAT HE IS ABLE TO RETURN TO THE FULL RANGE OF WORK. Any member who is given an exemption and is caught working at a job he has been exempted from will pay a penalty of 30 days suspension of seniority preference and lose his exempted status.

opined that the claimant was employable in the Charleston, South Carolina area based on his education, experience, and physical restrictions. Woodward identified numerous jobs in which the claimant could pursue.

Lynn McCain, another vocational rehabilitation expert, testified on behalf of Seaco. McCain was hired by Seaco to conduct a job market survey for the claimant. McCain reviewed the records but never personally interviewed the claimant. Based on the job market surveys and the approval from Dr. Warren, she stated that the claimant was employable in the Charleston labor market.

Nancy Favaloro, a vocational rehabilitation specialist, also testified in this matter. Strachan hired Favaloro to perform a vocational interview of the claimant and prepare a labor market survey to determine his employability. To a reasonable degree of professional certainty, she testified that the claimant could compete for and perform jobs on the Charleston waterfront. However, Favaloro conceded that the claimant could only perform some tasks of a longshoreman. She also identified numerous other land-based jobs that the claimant would be fit to perform.

The ALJ in this case issued a ruling in favor of the claimant. In the ALJ's Decision and Order, dated January 6, 1997, all of the above referenced testimony was considered in great detail. Over a span of thirty-one pages of single-spaced text, the ALJ addressed the testimony of each medical and vocational witness and stated findings based upon this testimony. Furthermore, the ALJ stated numerous reasons for her decisions based upon her evaluation of the reliability and credibility of witnesses.

II.

The ALJ's decision regarding disability will be upheld if it is supported by substantial evidence in the record considered as a whole. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988) (citing 33 U.S.C. § 921(b)(3) (1983)). Substantial evidence is more than a scintilla but less that a preponderance. See See v. Washington Metropolitan Area Transit Authority, 36 F.3d 375, 380 (4th Cir. 1994). Further, substantial evidence is such that a rea-

6

sonable mind might accept as adequate to support a conclusion. See id. at 380.

"On review, the ALJ's findings may not be disregarded on the basis that other inferences might have been more reasonable." Tann, 841 F.2d at 543. Furthermore, review of the ALJ's inferences and credibility assessments are limited in scope. Id. at 543 (see also Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs, 681 F.2d 938, 941 (4th Cir. 1982)). The Board may not reweigh the evidence or interfere with an ALJ's determinations of credibility unless it is inherently incredible or patently unreasonable. Santoro v. Maher Terminals, Inc. , 30 B.R.B.S. 171 (1996).

A.

Seaco argues that the Board erred in affirming the ALJ's conclusion that the claimant was permanently and totally disabled. We find no merit to this argument.

In general, disability claims are governed by a three tiered standard. Initially, the employee carries the burden of showing inability to return to former employment. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988). Next, the employer carries the burden of showing availability of suitable alternate employment if diligently sought by the claimant. Id. at 542. Finally, if the employer carries its burden, the claimant may still establish disability by showing diligent and unsuccessful attempts to secure employment. Id. at 542.

Based upon the law controlling determination of disabilities and our review of the ALJ's findings, we find substantial evidence to support the claimant's award of total disability.

The ALJ found that the claimant proved by a preponderance of the evidence that he was disabled from returning to his prior employment as a longshoreman. She found that Dr. Poletti's opinion as to the claimant's physical disability and capabilities most probative of the testimony, since he was the claimant's primary treating orthopaedic

7

surgeon who evaluated his physical limitations in detail over a substantial period of time. The ALJ also found that Dr. Schimenti's opinion was consistent with Dr. Poletti's. Based upon this testimony, the ALJ found that the claimant's back injury resulted in permanent impairment, consisting of bulging discs and chronic back and leg pain. Also, the ALJ found that the claimant had a six to eight percent whole body impairment rating and that he was precluded from re-entry into the heavy labor force as a result of this back condition. Further, the ALJ found that the claimant had numerous physical limitations.[3]

Based upon the testimony of Benjamin Flowers, President of the ILA Local 1422, the ALJ concluded that longshore work on the Charleston, South Carolina waterfront did not offer permanent assignment to specific jobs requiring sedentary, light, or medium duty work. The ALJ found that any light work situations would be for temporary periods only. Further, the ALJ found that this testimony was consistent with the following: first, the claimant's understanding that he had to be one hundred percent physically fit to return to work on the waterfront; second, Dr. Poletti's statement that there was no "good option" for longshoremen "as far as light duty status;" third, Dr. Wagner's understanding from his years of practice that longshoremen had to be able to do all the jobs on the waterfront; and fourth, vocational expert Woodward's understanding that "technically" speaking there was no light duty on the waterfront.

Next, the ALJ concluded that the employers failed to meet their burden of proof to show suitable alternate employment for the claimant. Several vocational experts testified before the ALJ. The ALJ reviewed and analyzed in detail the testimony of Ms. Hutchinson, Ms. Woodward, Ms. McCain, and Ms. Favaloro in her Decision and Order. Among this evidence, the ALJ gave much deference to the opinion of Ms. Hutchinson. Ms. Hutchinson opined that the claimant

_____

[3] These limitations were as follows: no pushing, pulling, or twisting; intermittent squatting, climbing, kneeling for no more than three hours per day; intermittent crawling; continuous standing for no more than fours hours per day; intermittent sitting for no more than six hours per day; intermittent walking, lifting and bending for no more than four hours per day; driving a motor vehicle for no more than one to three hours per day; and lifting no more than 20 to 50 pounds. J.A. at 109.

was unemployable and that job placement, occupational retraining, and vocational rehabilitation services were precluded. This was due to his illiteracy, low level of intelligence, work experience in an area in which he could no longer compete, inability to progress to jobs in which he had transferable skills, significant physical limitations, and ongoing pain. Furthermore, the ALJ specifically discredited much of the testimony of the other vocational experts. She found their various opinions to present limited probative value.

In light of the foregoing, we conclude that the ALJ's findings were based upon substantial evidence in the record considered as a whole. The claimant carried the burden of showing inability to return to his former employment, and the employers did not meet the burden of showing available suitable employment. Therefore, we affirm the ALJ's conclusion that the claimant was permanently and totally disabled.

B.

Seaco also argues that the Board erred in affirming the ALJ's conclusion that the employer was not entitled to a credit for special payments received by the claimant during his period of temporary disability. The special payments were of two different types: vacation/holiday payments and container royalty payments.[4]

_____

[4] Containers are large metal boxes created to hold numerous amounts of cargo. The containers can be carried on ships, railcars, and special trucks.

Before containerization, cargo was loaded onto ships piece by piece. Container technology drastically reduced the need for longshoremen, since the cargo could be loaded and unloaded quickly with less man power.

In general, container royalties are paid by employers into a trust to supplement longshoremen's incomes. The royalties are paid to the trust on a "per container" basis. The trustees dictate how the royalty payments are dispersed to the employees.

Historically, employees who work 700 hours in one year are entitled to container royalty payments. Further, a disabled employee can earn hours for credit towards container royalty payments for each day that worker receives compensation benefits. See Universal Maritime Service Corp. v. Wright, 155 F.3d 311, 317 (4th Cir. 1998).

The heart of this issue is whether the special payments received by the claimant constitute wages under the Act. See <u>Universal Maritime Service Corp. v. Wright</u>, 155 F.3d 311, 317 (4th Cir. 1998). Vacation, holiday, and container royalty payments are wages under the Act if they are earned through work but not if they are earned with disability credit. <u>Id.</u> at 328. Therefore, if the claimant received wages after his injury, Seaco is entitled to a credit against future compensation to the extent that the claimant received payments from the fund despite any disability.

As to the vacation/holiday payments, we find that the Board properly affirmed the ALJ's finding that Seaco failed to sufficiently develop the record on this issue. <u>Santoro v. Maher Terminal, Inc.</u>, 30 B.R.B.S. 171 (1996). Although, in its brief, Seaco makes a blanket statement that such evidence exists, there is no reference to the record. A review of the record, as done by the Board in its decision, unequivocally reveals that it does not contain any evidence that the claimant received vacation/holiday payments during his period of disability. Therefore, Seaco is not entitled to a credit for vacation and holiday payments received by the claimant.

As to the container royalty payments, we find that the Board properly affirmed the ALJ's determination that Seaco was not entitled to payments received by the claimant for container royalties. The pertinent evidence revealed that the claimant received $11,858.44 in container royalty payments in 1993. However, this amount represents payment for hours actually earned pre-injury in 1992, pursuant to the union contract. "If wages are earned before but received after an injury, they are only a `measure of pre-injury earning capacity not of postinjury earning capacity.'" <u>Wright</u>, 155 F.3d at 329 (citing <u>Eagle Marine Servs. v. Director, OWCP</u>, 115 F.3d 735, 737 (9th Cir. 1997)). Therefore, they cannot fairly and reasonably represent a wage earning capacity under the Act. <u>Id.</u> at 329. Thus, the claimant's receipt of container royalty payments for work done in 1992 constitutes only pre-injury earnings. This fact, coupled with the lack of evidence regarding any further container royalty payments, compels us to find that the employer is not entitled to a credit for container royalty payments received by the claimant.

10

In sum, the Board properly upheld the ALJ'S findings as well founded, rational, supported by substantial evidence, and in accordance with law.

C.

The petitioner argues that the Board erred in affirming the ALJ's decision and order awarding the claimant attorney's fees. The ALJ awarded the claimant attorney's fees at an hourly rate of $300.00 per hour for the services of E. Paul Gibson. We find this rate excessive.

In the Supplemental Decision and Order Awarding Attorney Fees, the ALJ found the amount of $28,774.55 owed to claimant's counsel in fees and costs. The award was based on the hourly rate set forth above. Also, the ALJ approved lower hourly rates for the services of an associate attorney and for the services of two paralegals.

Our review of the Board's decision is limited in scope. An agency's interpretation of its own regulations is entitled to substantial deference from the Courts. See Stinson v. United States, 508 U.S. 36, 45 (1993); United States v. Boynton, 63 F.3d 337, 342 (4th Cir. 1995).

The applicable regulation, 20 C.F.R. § 702.132(a) provides that any fee approved must be "reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the complexity of the legal issues involved, and the amount of benefits awarded ...." Furthermore, it is well established that a fee award should be consistent with those charged in the geographical area involved in the claim. Morris v. California Stevedore and Ballast Company, 10 B.R.B.S. 375 (1979); Thompson v. McDonnell Douglas Corporation, 17 B.R.B.S. 6 (1984); Parrot v. Seattle Joint Port Labor Relations Committee of the Pacific Maritime Association, 22 B.R.B.S. 434 (1989).

We find the rate of $300.00 per hour for the services of Mr. Gibson to be excessive. We come to this decision after taking into account the relatively non-complex nature of the claims and the claimant's failure to provide precedent of the Board awarding a $300.00 per hour fee. The Fourth Circuit has recently approved attorney's fees of $195.00

11

per hour in this type of case. <u>Mitchell v. Clark Maryland Terminals</u>, No. 97-1887, 1998 WL 406860 (4th Cir. July 15, 1998) (unpublished). Therefore, we find that the hourly fees awarded by the ALJ in this case excessive and not commensurate with the rate the Board has previously awarded in the geographic region in similar cases. With respect to the fees awarded for associate and paralegal services, we find the ALJ's decision supported by evidence and will leave this undisturbed.

Also, Seaco argues that the ALJ approved the fee petition without a review of the time record. More specifically, Seaco points to duplication of efforts, clerical tasks, and costs as unsupported charges. The ALJ addressed these concerns in the supplemental order. We find that the awards were properly addressed and within the discretion of the ALJ to grant to the claimant.

Finally, Seaco argues that the ALJ's award of fees was premature. We find no merit to this argument. A fee award is within the ALJ's power while an appeal is pending. However, the award is not enforceable until the compensation order becomes final. See <u>Lewis v. Bethlehem Steel Corp.</u>, 19 B.R.B.S. 90 (1986). Therefore, the ALJ's fee award was not premature.

III.

In conclusion, we hold that, with respect to the question of total disability and Seaco's credits for claimant receiving special payments, the ALJ's findings are supported by substantial evidence in the record considered as a whole and must be affirmed. However, with respect to the ALJ's findings in regard to attorney's fees, we hold that the matter should be reversed and remanded for further hearing regarding an hourly fee which is commensurate with the rate the Board has previously awarded in the geographical region in similar cases. In all other regards, the ALJ's fee award shall be affirmed.

<u>AFFIRMED IN PART AND REVERSED AND REMANDED IN PART</u>

12