**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-1967**

———————————

NEWPORT NEWS SHIPBUILDING AND DRY DOCK
COMPANY,

                                              Petitioner,

        versus

MELVIN DAVIS; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

                                              Respondents.

———————————

**No. 05-1998**

———————————

MELVIN DAVIS,

                                              Petitioner,

        versus

NEWPORT NEWS SHIPBUILDING AND DRY DOCK
COMPANY; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

                                              Respondents.

———————————

On Petitions for Review of an Order of the Benefits Review Board.
(03-184)

———————————

Argued: September 20, 2006        Decided: October 31, 2006

Before WILKINS, Chief Judge, KING, Circuit Judge, and HAMILTON, Senior Circuit Judge.

---

Petitions denied by unpublished per curiam opinion.

---

**ARGUED:** Jonathan Henry Walker, MASON, MASON, WALKER & HEDRICK, P.C., Newport News, Virginia, for Petitioner/Cross-Respondent Newport News Shipbuilding and Dry Dock Company. Gregory Edward Camden, MONTAGNA, KLEIN, CAMDEN, L.L.P., Norfolk, Virginia, for Respondent/Cross-Petitioner Melvin Davis. **ON BRIEF:** Charlene Parker Brown, MONTAGNA, KLEIN, CAMDEN, L.L.P., Norfolk, Virginia, for Respondent/Cross-Petitioner Melvin Davis.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Newport News Shipbuilding and Dry Dock Company ("the Company") petitions for review of an order of the Benefits Review Board (Board) affirming the finding of an administrative law judge (ALJ) that Melvin Davis' occupational back injury caused a permanent disability, thus entitling Davis to benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901-950 (West 2001 & Supp. 2006). Because the challenged finding is supported by substantial evidence, we deny the petition.

## I.

Davis was employed by the Company in its shipyard from 1971 to 1989. While working as a crane operator in March 1987, Davis injured his back when he attempted to move a hook and chain weighing approximately 50 pounds. Davis reported the injury to his supervisor and later went to the Company's medical clinic.

After initially treating Davis, the clinic doctor advised him to consult an outside physician. Davis contacted Dr. James L. Phillips, an orthopedist who began treating Davis. Based on numerous examinations of Davis and Davis' continuing complaints of back pain, Dr. Phillips ultimately diagnosed Davis with chronic back strain and placed him on various work restrictions, including limitations on lifting, bending, and stooping.

Although Davis returned to work intermittently after his injury, he was terminated in May 1989 because the Company did not have work available to him within his restrictions. Based on stipulations by Davis and the Company, the District Director of the Office of Workers' Compensation Programs issued a compensation order in October 1990 awarding Davis benefits for various periods of temporary total and partial disability, including ongoing payments of temporary total disability benefits until Davis was able to return to work. Thereafter, the Company paid benefits to Davis in accordance with the compensation order.

In June 1995, the Company moved to modify the compensation order, see 33 U.S.C.A. § 922, claiming that Davis was able to work 20 hours per week and therefore was entitled only to temporary partial disability benefits. Davis asserted, however, that he was permanently and totally disabled. After an informal conference, a claims examiner recommended granting the Company's request for modification.

In 1999--apparently before any ruling on its original request for modification--the Company asserted a new basis for modification, namely, that Davis' 1987 back injury had long since healed and thus was not the cause of his disability. The Company based this argument on opinions from other physicians indicating that Davis' back injury should have healed quickly and that there was no objective medical evidence of a continuing disability

4

resulting from the injury. The Company therefore claimed that Davis was not entitled to benefits for any period after the October 1990 order. Further, the Company argued that even if causation were established, Davis could perform his pre-injury job as of October 1990, or alternatively, that he was only partially disabled and could perform suitable alternate employment.

In April 2000, the ALJ conducted a hearing on the Company's request for modification. The ALJ subsequently issued an order finding, inter alia, that Davis' 1987 back injury was the cause of his disability. After reviewing in detail the medical evidence, the ALJ rejected the Company's causation argument:

> [I]t is noted that neither in 1990 nor 1995 did the [Company] challenge causation regarding existing findings. Regardless, these non[-]treating physicians mainly examined [Davis] on a one-time basis while Dr. Phillips provided continuing treatment. Davis' complaints remained constant and I do not find a reasonable basis on which to conclude that symptoms completely resolved from the 1987 injury.

J.A. 252. Addressing the Company's second argument, the ALJ determined that Davis could no longer perform his pre-injury work but that he was capable of performing light-duty work. Thus, the ALJ ordered the Company, inter alia, to pay Davis permanent partial disability benefits on a continuing basis.

The Company moved for reconsideration of the ALJ's order, reiterating its claim that Davis' 1987 injury was not the cause of his disability. The ALJ denied reconsideration. While

5

acknowledging certain weaknesses in Davis' causation evidence, the ALJ found no basis for changing his prior ruling:

> The major argument for [Davis] in this case is the consistency of the complaints of pain. However, since 1990 the only physician who has felt that there has been an ongoing process is Dr. Phillips. The opinions from this physician are inconsistent and vary widely.

> As the [Company] has noted Dr. Phillips reported on January 22, 1993 that [Davis] had no objective impairment and no further need for medical treatment. In September of that year the physician stated that Davis could work four hours a day, and the procedure at the District Director level in 1995 appears to follow that recommendation.

> Ultimately, the undersigned concludes that the [Company] almost totally mismanaged this case from 1987 through at least 1995. The [Company's] current arguments may have some merit and Davis' complaints may be somewhat implausible, but I find no reason to change the decision in light of statements from [Davis] and from Dr. Phillips.

Id. at 301.

The Company then appealed the ALJ's rulings to the Board. In March 2002, the Board affirmed the ALJ's finding of causation, explaining that the ALJ "discussed the medical evidence in detail, noted the qualifications and bases of all physicians' opinions, and acted within his discretion in relying on Dr. Phillips's opinion as [Davis'] treating physician." Id. at 414. The Board remanded the case to the ALJ, however, to reconsider when suitable alternate employment was first available to Davis. After further analysis on remand, the ALJ adhered to its earlier finding concerning alternate employment. But, after a second appeal, the Board again remanded

6

for further consideration of this issue.  The ALJ once again adhered to its earlier ruling on remand; after a third appeal, the Board affirmed the ALJ's ruling.

## II.

The Company challenges the ALJ's finding, affirmed by the Board, that Davis' 1987 occupational back injury was the cause of his disability after October 1990.  See 33 U.S.C.A. § 903(a) (providing that maritime employees may recover disability benefits "only if the disability ... results from an injury occurring upon [or adjacent to] the navigable waters of the United States").  In reviewing the Board decision, we must determine "whether the Board observed its statutorily-mandated standard for reviewing the ALJ's factual findings."  Newport News Shipbuilding & Dry Dock Co. v. Stallings, 250 F.3d 868, 871 (4th Cir. 2001) (internal quotation marks omitted).  That standard requires the Board to determine whether the ALJ's factual findings are "supported by substantial evidence in the record considered as a whole."  33 U.S.C.A. § 921(b)(3).  Substantial evidence is "more than a scintilla but less than a preponderance, and such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Norfolk Shipbuilding & DryDock Corp. v. Faulk, 228 F.3d 378, 380-81 (4th Cir. 2000) (per curiam) (internal quotation marks & citation omitted).  Further, the ALJ's findings "may not be disregarded on

7

the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988).

The Company argues that the ALJ erred in crediting Dr. Phillips' opinion over the contrary opinions of other physicians. As the Company points out, and as the ALJ acknowledged, Dr. Phillips' diagnosis of Davis' condition and the work restrictions he assigned to Davis varied over the course of Davis' treatment. Nevertheless, the record as a whole reflects a continuous belief by Dr. Phillips that Davis sustained an ongoing disability as a result of his 1987 injury. This belief was based on Dr. Phillips' many physical examinations of Davis--beginning shortly after his injury and continuing over several years--and on Davis' recurring complaints of back pain. Although Dr. Phillips' precise diagnosis of Davis' back problem varied somewhat, the record indicates that Dr. Phillips eventually settled on a primary diagnosis of chronic back strain with radicular symptoms. See, e.g., J.A. 603 (letter from Dr. Phillips stating that "Mr. Davis has a 20% permanent whole body disability as the result of chronic back strain with radicular symptoms which are caused by lifting a heavy chain and hook at work on 3/11/87"). And, while the specific work restrictions that Dr. Phillips imposed on Davis

varied over time, Dr. Phillips apparently maintained restrictions throughout his treatment of Davis.

To be sure, the record contains significant evidence from other physicians indicating that Davis' 1987 injury was not the cause of his alleged disability. For example, Dr. James E. Lesnick observed, after examining Davis, that "he has no physical signs nor studies to corroborate his complaint of pain." Id. at 677. Dr. Richard K. Neal opined that Davis' 1987 injury "consisted of a low back muscular strain injury," that Davis "should have made a good and complete recovery from this injury by July 1, 1987," and that he had no "permanent disability secondary to his injury at work of March 11, 1987." Id. at 687. Dr. Neal also stated that, based on the objective evidence of Davis' condition, his subjective complaints of pain were "markedly exaggerated." Id. at 688. And, Dr. Felix M. Kirven observed that Davis had "no objective evidence" to support his complaints of back pain but did have "a multitude of signs of symptom magnification." Id. at 878. Dr. Kirven thus determined that Davis had "no permanent nor partial disability as it relates to the March 11, 1987 back injury." Id. at 879.

Despite this contrary evidence, we conclude that the ALJ acted within its discretion in crediting the opinion of Dr. Phillips--who began treating Davis soon after his injury and continued treating him for several years thereafter--over the opinions of other physicians who treated Davis on a much more limited basis and, in

9

some cases, not until many years after the injury. See Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam) (noting general rule that treating physician's opinion "is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time"). By reviewing the conflicting medical evidence and choosing to credit Dr. Phillips' opinion based on his continuing treatment of Davis, the ALJ "provide[d] a sufficient explanation for [his] rationale in crediting [that] evidence." Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir. 2000) (internal quotation marks omitted); see Stiltner v. Island Creek Coal Co., 86 F.3d 337, 342 (4th Cir. 1996) ("We defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions."). We therefore conclude that substantial evidence supports the ALJ's finding that Davis' back injury caused his disability.[1]

---

[1]The Company also contends that the ALJ erred in considering that the Company had failed to contest causation in earlier proceedings. The extent to which the ALJ's causation ruling actually relied on this point is unclear. Nevertheless, based on the record here--reflecting a nearly ten-year delay by the Company in raising the causation issue, and the fact that much of the causation evidence the Company now relies on was available earlier--we cannot say that the ALJ erred in considering this delay as one factor in declining to modify the 1990 compensation order based on the newly alleged lack of causation.

III.

For the reasons set forth above, we deny the Company's petition for review.[2]

<u>PETITION DENIED</u>

---

[2]In his cross-petition, Davis argues that the Board erroneously considered one of the Company's appeals on the merits despite the filing of an untimely notice of appeal and therefore that we lack jurisdiction over this case. The Board concluded, however, that the notice was timely filed, based on the Company's certificate of service and internal postmark. <u>See</u> 20 C.F.R. § 802.207(b) (2006). We find no error in this ruling and accordingly deny Davis' cross-petition.